[900 NE2d 934, 872 NYS2d 383]

HELMSLEY-SPEAR, INC., et al., Appellants, v MICHAEL FISHMAN, as President of SEIU Local 32B-32J, AFL-CIO, et al., Respondents.

Argued October 14, 2008; decided November 24, 2008

**POINTS OF COUNSEL**

*McCarter & English, LLP,* New York City (*Peter D. Stergios, Patrick M. Collins* and *Aimée Sato* of counsel), for appellants. I. Federal labor law does not preempt a state court action to abate tortious activity. (*Teamsters v Morton,* 377 US 252; *Machinists v Gonzales,* 356 US 617; *San Diego Building Trades Council v Garmon,* 359 US 236; *Machinists v Wisconsin Employment Relations Comm'n,* 427 US 132; *Healthcare Assn. of N.Y. State, Inc. v Pataki,* 471 F3d 87; *Moore v City of New York,* 219 F Supp 2d 335; *Belknap, Inc. v Hale,* 463 US 491; *Radcliffe v Rainbow Constr. Co.,* 254 F3d 772; *Automobile Workers v Russell,* 356 US 634; *Linn v Plant Guard Workers,* 383 US 53.)

*Levy Ratner, P.C.,* New York City (*Andrew L. Strom, Daniel Engelstein* and *Dana Lossia* of counsel), for respondents. I. The Appellate Division correctly held that appellants' suit is preempted by the National Labor Relations Act. (*Golden State Transit Corp. v Los Angeles,* 475 US 608; *Wisconsin Dept. of Industry v Gould Inc.,* 475 US 282; *San Diego Building Trades Council v Garmon,* 359 US 236; *Burlington Northern R. Co. v Maintenance of Way Employes,* 481 US 429; *Sears, Roebuck & Co. v Carpenters,* 436 US 180; *NLRB v Sears, Roebuck & Co.,*

421 US 132; *Edward J. DeBartolo Corp. v Florida Gulf Coast Building & Constr. Trades Council,* 485 US 568; *United States v Doe,* 968 F2d 86; *Kaufman v Allied Pilots Assn.,* 274 F3d 197; *San Diego Building Trades Council v Garmon,* 359 US 236.) II. Labor Law § 807 barred the trial court from enjoining the union's drumming. (*Jou-Jou Designs v International Ladies' Garment Workers' Union, Local 23-25,* 94 AD2d 395, 60 NY2d 1011; *Schivera v Long Is. Light. Co.,* 296 NY 26; *National Woodwork Mfrs. Assn. v NLRB,* 386 US 612; *Wall St. Garage Parking Corp. v New York Stock Exch., Inc.,* 10 AD3d 223; *Price Paper & Twine Co. v Miller,* 182 AD2d 748; *Burlington N. Santa Fe Ry. Co. v International Bhd. of Teamsters Local 174,* 203 F3d 703.) III. Appellants have no claim for private nuisance. (*Copart Indus. v Consolidated Edison Co. of N.Y.,* 41 NY2d 564; *532 Madison Ave. Gourmet Foods v Finlandia Ctr.,* 96 NY2d 280; *Dugway, Ltd. v Fizzinoglia,* 166 AD2d 836; *Lewis v Stiles,* 158 AD2d 589; *Langan v Bellinger,* 203 AD2d 857; *People v Sturm, Ruger & Co.,* 309 AD2d 91.)

### OPINION OF THE COURT

PIGOTT, J.

The issue on this appeal is whether plaintiffs' private nuisance cause of action is preempted by the National Labor Relations Act (NLRA). We hold that it is not.

### I.

Plaintiff Helmsley-Spear, Inc., managing agent of the Empire State Building (ESB),* retained Copstat Security, LLC, a private security firm, to provide security services for the ESB. In 2005, defendants Michael Fishman, as President of SEIU Local 32B-32J, AFL-CIO, SEIU Local 32B-32J, AFL-CIO, and John Does 1-7 (collectively, the Union) began a concerted effort to organize Copstat employees. As part of that endeavor, on 18 separate days between November 2005 and February 2006, members of the Union assembled outside certain entrances of the ESB, distributing leaflets while one or more of the members drummed on a plastic container, metal pot or tin can.

Thereafter, nonparty Copstat filed three unfair labor practice charges against the Union with the National Labor Relations Board (NLRB), alleging that the Union's picketing or threatened picketing violated 29 USC § 158 (b) (7) (C), and that the Union's

---

* By court order dated January 26, 2007, Empire State Building Company L.L.C. was substituted for Helmsley-Spear as plaintiff.

activity was designed to coerce Helmsley-Spear into discontinuing business with Copstat in violation of 29 USC § 158 (b) (4) (i), (ii) (B) and coerce Copstat employees into selecting the Union as their collective bargaining representative in violation of 29 USC § 158 (b) (1) (A).

The NLRB dismissed the charges, finding that the Union "was engaged in protected handbilling or leafleting" and that "the use of the drum on the days in question . . . was [not] sufficient to transform the leafleting activity into unlawful conduct." The NLRB's Office of Appeals affirmed that decision on the same grounds.

Meanwhile, plaintiffs Helmsley-Spear and owners of nearby businesses commenced the instant private nuisance action against the Union seeking an order enjoining it from engaging in drumming or other noise-making activities. Following a hearing, Supreme Court granted plaintiffs' request for a preliminary injunction, concluding that they met their burden of establishing that the drumming "caused stress and business interruption" which, if left unabated, would cause more stress and harm to the listeners (12 Misc 3d 1151[A], 2006 NY Slip Op 50855[U], *8). The court limited the injunction specifically to the drumming and did not prohibit the leafleting.

The Appellate Division reversed and dismissed the complaint, holding that plaintiffs' "action to restrain conduct of loud drumming to publicize [the] [U]nion's handbilling activities is preempted by federal labor law," and stating that the NLRB had previously concluded that the Union had the right to engage in the drumming (*Helmsley-Spear, Inc. v Fishman*, 39 AD3d 361 [1st Dept 2007] [citations omitted]). Because it found plaintiffs' claim to be preempted by federal law, the Appellate Division did not address the Union's additional argument, that Labor Law § 807 prohibited the trial court from enjoining the drumming.

This Court granted leave (10 NY3d 703 [2008]) and we now reverse.

## II.

It has been a hallmark of state-federal jurisprudence in the area of labor law that each jurisdiction recognize the respective rights and remedies of the other. The federal courts, in finding "presumptive preemption" with respect to certain union activities, have been careful to avoid interfering with a state's right to keep order within its borders. The states, similarly, have been

careful to respect the federal government's right to protect unions, their workers and appropriate organizing activities.

In this regard, two federal statutes, NLRA §§ 7 and 8 (codified at 29 USC §§ 157, 158), "regulate 'concerted activities' and 'unfair labor practices,' respectively, seeking to protect the former and stamp out the latter" (*Building Trades Employers' Educ. Assn. v McGowan*, 311 F3d 501, 508 [2d Cir 2002]). Because the NLRA does not include an express preemption provision (*see Building & Constr. Trades Council v Associated Builders & Contractors of Mass./R.I., Inc.*, 507 US 218, 224 [1993]), the United States Supreme Court in *San Diego Building Trades Council v Garmon* (359 US 236 [1959]) addressed Congress's silence, by holding that "state regulations and causes of action are presumptively preempted if they concern conduct that is actually or arguably either prohibited or protected by the Act" (*Belknap, Inc. v Hale*, 463 US 491, 498 [1983], citing *Garmon*, 359 US at 245).

Where conduct falls within the scope of this so-called "*Garmon* preemption," state regulations or causes of action may still be maintained "if the behavior to be regulated is behavior that is of only peripheral concern to the federal law or touches interests deeply rooted in local feeling and responsibility" (*Belknap*, 463 US at 498, citing *Garmon*, 359 US at 243-244; *Sears, Roebuck & Co. v Carpenters*, 436 US 180, 200 [1978]; *Farmer v Carpenters*, 430 US 290, 295 [1977]). In such cases, "the state's interest in controlling or remedying the effects of the conduct is balanced against both the interference with the [NLRB's] ability to adjudicate controversies committed to it by the Act, and the risk that the state will sanction conduct that the Act protects" (*Belknap*, 463 US at 498-499, citing *Sears, Roebuck & Co.*, 436 US at 205 [citations omitted]).

Here, even if one were to assume that the drumming constituted arguably "protected" conduct under the NLRA, as the Union argues and the Appellate Division implied, it does not necessarily follow that our state courts are foreclosed from adjudicating plaintiffs' claim. This point was made clear in *Sears, Roebuck & Co.*, where the United States Supreme Court held that a state trespass claim lodged by an employer against picketers—challenging the location of the picketing as opposed to the picketing itself—was not preempted by the NLRA even though trespass was arguably protected under the Act (436 US at 198-204).

The *Sears* Court recognized that, even in cases where an employer has no right to invoke the Board's jurisdiction, preemption may be appropriate where "the exercise of state jurisdiction . . . might create a significant risk of misinterpretation of federal law and the consequent prohibition of protected conduct" (*id.* at 203). Nonetheless, the Court concluded that the state's evaluation of whether the union's trespass constituted protected activity under the Act did "not create an unacceptable risk of interference with conduct which the Board, and a court reviewing the Board's decision, would find protected" because, although "there are unquestionably examples of trespassory union activity" where such conduct may or may not be protected, "experience under the Act teaches that such situations are rare and that a trespass is far more likely to be unprotected than protected" (*id.* at 205). That reasoning applies here.

■ The controversy in this case—whether the drumming constituted a private nuisance—is distinctly different from the matter presented by Copstat to the NLRB, which involved allegations that the Union engaged in impermissible picketing and coercive conduct. Moreover, there is no risk that the trial court's adjudication of the nuisance action will result in a "significant risk of misinterpretation" of federal labor law or in the "consequent prohibition of protected conduct" because the trial court restricted its imposition of the preliminary injunction to the drumming and emphasized that the order did not affect the Union's leafleting activity. Just as trespass, as found in *Sears*, "is far more likely to be unprotected than protected" under the Act, so, too, is the tort of private nuisance.

The dissent's implication that *Sears* is inapplicable because the Board found that the drumming is "actually protected" and constitutes "federally protected conduct" (*see* dissenting op at 480) misconstrues the Board's factual determination, which was centered on alleged "prohibited conduct," namely, allegations of the unfair labor practices of impermissible picketing and coercive activity. The Board did not proclaim the drumming to be "protected conduct" under the NLRA but, rather, premised its holding exclusively on the leafleting itself, finding that "the use of the drum . . . was [not] sufficient to transform the leafleting activity into unlawful conduct." That holding did not, ipso facto, render the drumming "protected conduct," as the dissent claims, but merely determined that the drumming did not transform otherwise protected conduct into prohibited conduct.

Moreover, plaintiffs' nuisance claim "touche[s] interests so deeply rooted in local feeling and responsibility" that it could not be inferred that Congress intended to deprive this State of the power to act (*Garmon*, 359 US at 244). The tort of private nuisance, much like the tort of trespass, has historically been governed by state law. It cannot be said that Congress, by enacting the NLRA, intended to preempt states from protecting their citizens from obnoxious conduct. Indeed, the United States Supreme Court has on numerous prior occasions found *Garmon* preemption inapplicable to other state common-law claims that touched upon a state's "local interests" (*see Belknap*, 463 US 491 [1983], *supra* [state law claims for misrepresentation and breach of contract by strike replacements not preempted]; *Sears, Roebuck & Co.*, 436 US 180 [1978], *supra* [state trespass claim allowed because the action concerned the location of the picketing and not the picketing itself]; *Farmer*, 430 US 290 [1977], *supra* [state intentional infliction of emotional distress claim not preempted, even though the conduct arguably involved unfair labor practices]; *Linn v Plant Guard Workers*, 383 US 53 [1966] [state defamation claims brought in the course of a labor dispute]; *see also Automobile Workers v Russell*, 356 US 634 [1958], *reh denied* 357 US 944 [1958] [pre-*Garmon* decision finding torts of threatened violence like false arrest, false imprisonment and malicious prosecution not preempted by the Act]).

Although the principal aim of *Garmon* preemption—to ensure the conformity of the national labor policy—is a sound one, the United States Supreme Court has been careful not to eliminate "state-court jurisdiction over conduct traditionally subject to state regulation without careful consideration of the relative impact of such a jurisdictional bar on the various interests affected" (*Sears, Roebuck & Co.*, 436 US at 188) and has found that *Garmon* preemption should not be applied inflexibly in circumstances where " 'the State has a substantial interest in regulation of the conduct . . . and the State's interest is one that does not threaten undue interference with the federal regulatory scheme' " (*id.* at 188, quoting *Farmer*, 430 US at 302).

Balancing the state interest in adjudicating private nuisance claims against the interference with the NLRB's ability to determine matters committed to it by the NLRA and the risk that state courts will prohibit conduct otherwise protected by the Act, we conclude that Congress did not intend to preempt

the jurisdiction of state courts to adjudicate the tortious conduct alleged here.

## III.

■ The Union's alternative argument, that the nuisance claim is preempted by the doctrine pronounced by the United States Supreme Court in *Machinists v Wisconsin Employment Relations Comm'n* (427 US 132 [1976]), which "applies to conduct the NLRA left unregulated" (*Healthcare Assn. of N.Y. State, Inc. v Pataki*, 471 F3d 87, 107 [2d Cir 2006]), is similarly unavailing.

The so-called *Machinists* preemption "proscribes state regulation and state-law causes of action concerning [unregulated] conduct . . . that was to remain a part of the self-help remedies left to the combatants in labor disputes" (*Belknap*, 463 US at 499, citing *Machinists*, 427 US at 140, 147-148). Preemption under *Machinists* "protects employers' and unions' use of 'economic weapons' that Congress aimed for them to have freely available" (*Building Trades Employers' Educ. Assn.*, 311 F3d at 508, citing *Machinists*, 427 US at 150-151). Thus, although there is no specific statutory provision that "expressly protects these economic weapons, they are integral parts of the legislative scheme and cannot be subject to regulation by the states or the courts or even the Board" (*Building Trades Employers' Educ. Assn.*, 311 F3d at 509).

The drumming in this instance does not constitute an "economic weapon" or "self-help" remedy akin to, for example, the employee walkout in *Machinists* or a lockout by an employer. Loud drumming is not an "integral part[ ] of the legislative scheme" of the NLRA.

The Appellate Division order should be reversed, with costs, and the matter remitted to that Court for consideration of issues raised but not determined on appeal to that court.

READ, J. (dissenting). The majority has not cited a single case that endorses a state court action challenging exactly the same conduct the National Labor Relations Board (NLRB or the Board) has already ruled to be protected by the National Labor Relations Act (NLRA or the Act). This is not surprising. Preemption is well-established as a matter of national labor policy, and is meant to avoid just the kind of conflict between federal and state law presented by this case.

## I.

Under the Supreme Court's decision in *San Diego Building Trades Council v Garmon* (359 US 236 [1959]),

> "[w]hen it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law. Nor has it mattered whether the States have acted through laws of broad general application rather than laws specifically directed towards the governance of industrial relations. Regardless of the mode adopted, to allow the States to control conduct which is the subject of national regulation would create potential frustration of national purposes" (*id.* at 244 [footnote omitted]).

The *Garmon* court further emphasized that while "[a]t times it has not been clear whether the particular activity regulated by the State was governed by § 7 or § 8 or was, perhaps, outside both these sections" (*id.*), *"courts are not primary tribunals to adjudicate such issues"* (*id.* [emphasis added]). Rather,

> "[i]t is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board. What is outside the scope of [a] Court's authority cannot remain within a State's power and state jurisdiction too must yield to the exclusive primary competence of the Board" (*id.* at 244-245 [citations omitted]).

As the Second Circuit recently pointed out, however, even the *Garmon* court itself

> "recognized that the principles it announced were so broad that they would sometimes yield, as where, for instance, the activity regulated was merely peripheral to the federal concerns, or where the states' need to regulate certain conduct was so obvious that one would not infer that Congress meant to displace

the states' power" (*Healthcare Assn. of N.Y. State, Inc. v Pataki*, 471 F3d 87, 95 [2d Cir 2006], citing *Garmon*, 359 US at 243-244).

More specifically, "[b]ecause *Garmon* covers so many different concerns and situations, the one-size fits all remedy can be difficult to administer" (*Pataki*, 471 F3d at 95), and in *Sears, Roebuck & Co. v Carpenters* (436 US 180 [1978]), the Supreme Court "distinguish[ed] the substantive and remedial concerns" underlying *Garmon* "from the primary jurisdiction concern and prescrib[ed] different treatments for each" (*Pataki*, 471 F3d at 95, citing *Sears*, 436 US at 201).

In *Sears*, the Supreme Court found that a California state trespass claim against a group of picketers was not preempted by the NLRA. While the facts of *Sears* at first seem similar to those of this case, the first sentence of the *Sears* opinion illuminates the crucial distinction:

> "The question in this case is whether the National Labor Relations Act, as amended, deprives a state court of the power to entertain an action by an employer to enforce state trespass laws against picketing which is *arguably—but not definitely—* prohibited or protected by federal law" (*Sears*, 436 US at 182 [emphasis added]).

While federal law unquestionably trumps state law where there is an actual conflict, *Sears* focuses on the grey areas between actual conflict and no conflict at all: areas of "arguable" conflict between state tort law and federal labor law. Where such an "arguable" conflict exists, it is generally accepted that the appropriate federal tribunal should have the first chance to decide whether federal law, in fact, applies—a concept known as "primary jurisdiction." Importantly, primary jurisdiction lies at the core of *Sears*, which explicitly relied on the defendant union's *failure to seek an adjudication before the NLRB* in reaching its holding:

> "The primary-jurisdiction rationale unquestionably requires that when the same controversy may be presented to the state court or the NLRB, it must be presented to the Board. *But that rationale does not extend to cases in which an employer has no acceptable method of invoking, or inducing the Union to invoke, the jurisdiction of the Board.* We are therefore persuaded that the primary jurisdiction

rationale does not provide a *sufficient* justification for pre-empting state jurisdiction over *arguably protected conduct when the party who could have presented the protection issue to the Board has not done so and the other party to the dispute has no acceptable means of doing so"* (436 US at 202-203 [first and third emphases added]).

Here, the dispute was, in fact, submitted to the NLRB in the first instance, and the NLRB had ruled on the legality of the complained-of activity (drumming) by the time the nuisance claim was presented to Supreme Court. Accordingly, primary jurisdiction preemption—which *Sears* indicates can yield where no redress has been sought from a federal tribunal[1]—is simply not involved.[2] Instead, a much more powerful form of preemption is implicated: "[t]he danger of state interference with federally protected conduct[—]the principal concern of the second branch of the *Garmon* doctrine" (*Sears*, 436 US at 203). Critically, "there is a *constitutional* objection to state-court interference with conduct *actually protected* by the Act" (*id.* at 200 [emphasis added]). Since the NLRB actually ruled on the complained-of conduct in this case, the central question is whether this conduct was "actually protected" by the Act; in the case of "actually protected" activity, the discretionary exception outlined by *Sears* for certain "arguably protected" activities is inapplicable as a constitutional matter.

The NLRB's ruling in this case must be read as finding the complained-of conduct to be "actually protected" under the Act. After Copstat filed a charge against the Union on December 8, 2005, alleging violations of NLRA § 8 (b) (1), (4) and (7) (codi-

---

**1.** Notably, "[t]hat state law might provide remedies unavailable under the NLRA has never been a basis for avoiding *Garmon* preemption" (*Richardson v Kruchko & Fries*, 966 F2d 153, 157 [4th Cir 1992], citing *Garmon*, 359 US at 246-247 ["In fact, since remedies form an ingredient of any integrated scheme of regulation, *to allow the State to grant a remedy . . . which has been withheld from the (NLRB) only accentuates the danger of conflict*" (359 US at 247 [emphasis added])]; *Operating Engineers v Jones*, 460 US 669, 684 [1983]). Indeed, "the Supreme Court has made clear that state-law claims may be preempted even when a plaintiff is without a remedy under the NLRA" (*Richardson*, 966 F2d at 157, citing *Guss v Utah Labor Relations Bd.*, 353 US 1 [1957]).

**2.** The critical role of the Board's prior ruling in this case cannot be overstated: absent a prior ruling by the NLRB, the plaintiffs' private nuisance cause of action might well not be preempted by the Act. But we need not, and should not, rule on that issue here, where the NLRB *was* presented with this dispute and ruled as it did.

fied at 29 USC § 158), the Acting Regional Director of the NLRB "carefully investigated and considered the charges filed by [Copstat] against [the Union]." Upon a review of evidence adduced during the Board's investigation, including "[e]vidence . . . establish[ing] that approximately six to twelve individuals associated with the Union distributed leaflets and *played a drum* on four separate days, for approximately 1½ to 3 hours per day, on the sidewalk in front of entrances to the Empire State Building" (emphasis added), the NLRB concluded that "[t]he evidence therefore *establishes* that the Union was engaged in *protected* handbilling or leafleting, and not in picketing or other coercive conduct. . . . Neither the use of [a King Kong] costume *nor the use of the drum* on the days in question, as described above, was sufficient to transform the leafleting activity into unlawful conduct" (emphasis added).

Because the NLRB has issued an actual determination in this case, the majority's finding of nonpreemption requires the NLRB's determination to be read *not to protect* the drumming activity (*see Sears*, 436 US at 199 ["there is a constitutional objection to state-court interference with conduct *actually protected* by the Act" (emphasis added)]). But such a reading does not comport with the facts and the weight of federal authority on the issue of "protected activity" under the Act.

While section 8 (b) (4) *et seq.* of the NLRA—specifically addressed in both Copstat's complaint and the NLRB's determination—is generally directed towards prohibited conduct, that section also outlines protected conduct; in particular,

"for the purposes of . . . paragraph (4) only, nothing contained in such paragraph shall be construed to prohibit *publicity, other than picketing, for the purpose of truthfully advising the public, including consumers* and members of a labor organization, *that a product or products are produced by an employer with whom the labor organization has a primary dispute and are distributed by another employer*, as long as such publicity does not have an effect of inducing any individual employed by any person other than the primary employer in the course of his employment to refuse to pick up, deliver, or transport any goods, or not to perform any services, at the establishment of the employer engaged in such distribution" (29 USC § 158 [b] [4] [emphasis added]).

Critically, it is the proviso to section 8 (b) (4) of the Act protecting *"publicity*, other than picketing, for the purpose of truthfully advising the public [of a labor dispute]" (emphasis added) that protects handbilling and leafleting directed at non-parties to a labor dispute; the operative language of this proviso is "publicity . . . for the purpose of truthfully advising the public," not the terms "handbilling" or "leafleting," which are simply terms of art for activities covered by the proviso.[3] Thus, it is clear that the NLRB's determination that distributing leaflets, banging a drum, and wearing a King Kong costume constituted "protected handbilling or leafleting, and not . . . picketing or other coercive conduct" must be read to mean that all three activities (distributing leaflets, banging a drum, and wearing a King Kong costume) were actually protected under section 8 (b) (4) of the Act.

## II.

Next, while the majority cites, in the alternative, a putative exception to absolute federal preemption for conduct implicating interests "deeply rooted in local feeling and responsibility" (*Garmon*, 359 US at 244), the Supreme Court has never applied this principle to conduct adjudged by the Board to be actually protected by the NLRA. Simply reading *Garmon* itself indicates why; here is the so-called "exception" placed in its proper context within the *Garmon* opinion:

> "States [may have the] power to regulate . . . where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, *in the absence of compelling congressional direction,* we could not *infer* that Congress had deprived the States of the power to act.
>
> *"When it is clear* or may fairly be assumed *that the activities which a State purports to regulate are protected* by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, *due regard for the federal enactment requires that state*

---

**3.** The language of the NLRB's determination in this case reveals the "publicity" basis for section 8 (b) (4) protection: after concluding that "[t]he evidence therefore establishes that the Union was engaged in protected handbilling or leafleting, and not in picketing or other coercive conduct," the Board stated that "[t]he use of an ape costume did not constitute signal picketing, but was a permissible *device to draw attention to the Union's handbilling activities*" (emphasis added).

*jurisdiction must yield.* To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law. Nor has it mattered whether the States have acted through laws of broad general application rather than laws specifically directed towards the governance of industrial relations. Regardless of the mode adopted, to allow the States to control conduct which is the subject of national regulation would create potential frustration of national purposes" (*Garmon*, 359 US at 243-244 [footnotes and citations omitted; emphasis added]).

In short, where conduct is actually found to be protected by the NLRA, as is the case here, this constitutes "compelling congressional direction" and no "infer[ence]" is required to conclude that "Congress ha[s] deprived the States of the power to act." Consequently, "state jurisdiction *must* yield."

### III.

Since the NLRB's January 4, 2006 determination found the complained-of conduct (drumming) to be actually protected by the Act, appellants' private nuisance action in state court has been preempted by the NLRA. As the *Sears* court pointed out, "there is a *constitutional* objection to state-court interference with conduct *actually protected* by the Act" (436 US at 199 [emphasis added]). Accordingly, I respectfully dissent.

Chief Judge KAYE and Judges SMITH and JONES concur with Judge PIGOTT; Judge READ dissents in a separate opinion in which Judge GRAFFEO concurs; Judge CIPARICK taking no part.

Order reversed, etc.