REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 376

SEPTEMBER TERM, 2015

UNITED FOOD AND COMMERCIAL
WORKERS INTERNATIONAL UNION, ET
AL.

v.

WAL-MART STORES, INC., ET AL.

Eyler, Deborah S.,
Berger,
Harrell, Glenn T. Jr.
        (Retired, Specially Assigned),

JJ.

Opinion by Eyler, Deborah S., J.

Filed: June 1, 2016

The primary issue in this case is whether an employer's state law claims for trespass and private and public nuisance asserted in a Maryland court against a union that does not represent its employees, who are not unionized, is preempted by the National Labor Relations Act, 29 U.S.C. § 151-167. We hold that they are not.

The appellants are the United Food and Commercial Workers International Union ("the UFCW"), its subsidiary, the Organization United for Respect at Walmart ("OURWalmart"), and related people and organizations (collectively "the Union").[1] The appellees are Walmart Stores, Inc., and its affiliated companies, WalMart Stores East, LP, and Sam's East, Inc. (collectively "Walmart"). In the Circuit Court for Anne Arundel County, Walmart sued the Union for trespass and public and private nuisance, seeking declaratory and injunctive relief and nominal damages. The court granted a preliminary injunction; denied the Union's motion to dismiss for lack of subject matter jurisdiction; and granted summary judgment in favor of Walmart, entering a permanent injunction.

In this appeal, the Union presents five questions for review, which we have consolidated, rephrased, and reordered as follows:

> I.     Did the circuit court err by denying its motion to dismiss Walmart's claims for lack of subject matter jurisdiction?
>
> II.    Did the circuit court err by denying its motion to dismiss Walmart's public nuisance claim for lack of standing?

---

[1] The related people and organizations are Alan Hanson and Sylvia Fabela, employees of the UFCW; Jobs with Justice, a coalition of labor organizations, faith groups, community organizations, and student activists; and protestors identified only as "Does 1-10."

III.    Did the circuit court abuse its discretion in fashioning the scope of its permanent injunction?

IV.    Did the circuit court err by ruling that this controversy is not a "labor dispute" and/or by finding that Walmart satisfied the heightened requirements of the Anti-Injunction Act?[2]

Finding no error, we shall affirm the judgment.

## FACTS AND PROCEEDINGS

The UFCW is a labor union that represents grocery, retail, meatpacking, and food processing workers. Beginning in 2011, the Union held a number of demonstrations at Walmart stores in 13 states, including Maryland.[3] Walmart employees are not unionized.

---

[2] As framed by the Union, the questions presented are:

1) Does the Supremacy Clause of the U.S. Constitution apply such that the NLRA preempts Walmart's lawsuit because, as Walmart argued to the NLRB, the NLRA arguably prohibits the events at issue in this lawsuit?
2) Did the Circuit Court err in enjoining appellants from entering parking lots and sidewalks to which Walmart does not presently hold the right to exclusively possess because those areas are subject to broad commercial nonexclusive easements?
3) Did Walmart lack standing to raise its nuisance claim because Walmart failed to prove that it suffered harm different in kind from the public?
4) Did the Court err in finding that this controversy was not a labor dispute and that Walmart did not need to prove the requirements of the Anti-Injunction Act?
5) Does the record justify an order enjoining appellants from entering Walmart property for any non-shopping purpose?

[3] The other states are Arkansas, California, Colorado, Florida, Georgia, Illinois, Michigan, Oklahoma, Pennsylvania, Texas, Washington, and Wisconsin.

The Union demonstrations in Maryland took place between July 16, 2011, and September 5, 2013, at Walmart stores in Laurel, Landover Hills, Bowie, Hanover, Arbutus, Severn, and Germantown. Most were carried out inside the stores, with some being held on adjacent parking areas that were owned or leased by Walmart, and one being held on a nearby public road. The demonstrations were organized like "flash mobs," meaning that demonstrators were summoned by social media or mobile phone communications to quickly gather at a store. The demonstrators showed up *en masse*, "crashing" the store in a coordinated effort. They marched through the store vestibule and aisles, chanting, singing, blowing whistles, shouting into bullhorns and megaphones, and littering the store with flyers. Some of the demonstrations were small, lasting only 15 to 20 minutes. Others were large, with upwards of 100 or more demonstrators, and lasting over an hour.

In many of the in-store events, the demonstrators interfered with customers by blocking access to the cash registers and the restrooms. During a demonstration in the Laurel Walmart on July 16, 2011, for example, 40 demonstrators wearing "OURWalmart" tee-shirts formed a human chain stretching from the first to the last checkout counter.

The demonstrators also blocked ingress and egress to parking lots, parking spaces, and store entrances. In May of 2012, demonstrators at the Bowie Walmart parked a large van emblazoned with OURWalmart logos in the parking lot. They played OURWalmart videos on a television screen mounted on the van, piped music through speakers, and solicited customers and employees as they passed by.

In some instances, demonstrators inside stores interrupted Walmart management meetings, forcing themselves into the meeting rooms and videotaping the managers' efforts to get them to leave. In all the demonstrations, Walmart managers repeatedly told the demonstrators to leave Walmart's property, but they refused. Ultimately, they were removed by the police. Walmart's lawyers sent cease and desist letters to counsel for the UFCW in October of 2011, October of 2012, November of 2012, and April of 2013, to no avail.

In March of 2013, Walmart filed an unfair labor practice ("ULP") charge against the UFCW and OURWalmart, with the National Labor Relations Board ("NLRB"). It alleged that the UFCW had violated section 8(b)(1)(A) of the NLRA "by planning, orchestrating, and conducting a series of unauthorized and blatantly trespassory in-store mass demonstrations" by which it "restrained and coerced [Walmart] employees" in the exercise of their right to refrain from unionizing.[4] It attached a summary of 70 "events" the Union had held at Walmart stores in thirteen states, including twelve in Maryland. The allegations in the ULP charge all pertained to instances when demonstrators confronted Walmart managers or employees directly, using "in your face" tactics in an effort to intimidate them into supporting the Union. Instances during the demonstrations that did not include such coercive activities were not included in the ULP charge.

---

[4] A prior ULP charge, filed in November of 2012, was resolved by a settlement agreement between the parties. Walmart filed a new charge after the UFCW breached that agreement.

4

Walmart amended its ULP charge in May of 2013, narrowing its scope to several events at a few stores around the country. The amended ULP charge did not include any events at Walmart stores in Maryland.

On September 20, 2013, Walmart filed the lawsuit that gives rise to this appeal.[5] In a first amended complaint ("FAC"), filed on October 2, 2013, it alleged that the Union had violated Maryland law "through coordinated, statewide acts of trespass," including by conducting "in-store 'flash mobs'" and by blocking "ingress and egress to parking lots, parking spaces, vehicular traffic, and store entrances." The FAC recited detailed allegations about more than 15 demonstrations at the seven Maryland Walmart stores we have named. As noted, Walmart set forth claims for trespass and public and private nuisance, and sought nominal damages, a permanent injunction, and declaratory relief.

On October 10, 2013, Walmart filed a motion for preliminary injunction. The court held an evidentiary hearing and granted the motion. Its order, entered on November 26, 2013, enjoined the Union from entering Walmart's property in Maryland "for any purpose other than shopping for and/or purchasing merchandise"; from "engag[ing] in activities such as unlawful picketing, patrolling, parading, demonstrations, 'flash mobs,' handbilling, solicitation, customer interference, and manager confrontations"; and from "engaging in any nuisance conduct off Walmart's private property . . . which blocks,

---

[5] Walmart also filed state court actions in Florida, Arkansas, Colorado, Ohio, and Washington.

causes to be blocked, disrupts and/or interferes" with access by consumers or employees to the property.[6]

In the meantime, on October 11, 2013, the Union filed a motion to dismiss the FAC for lack of subject matter jurisdiction, arguing that Walmart's claims were preempted by the NLRA. Walmart opposed the motion. The court held a hearing, at the conclusion of which it ruled that Walmart's claims were not preempted by the NLRA. It entered an order denying the motion on November 26, 2013.

On August 19, 2014, after extensive discovery, Walmart and the Union filed cross-motions for summary judgment. At a hearing on March 3, 2015, the court denied the Union's motion and granted Walmart's motion. It issued a memorandum opinion and order to that effect, which was docketed on March 16, 2015. Also on that day, the court entered a permanent injunction, prohibiting the Union and its agents or associates from:

> 1. Entering on Walmart's private property in the State of Maryland to engage in activities such as picketing, patrolling, parading, demonstrations, chanting, "flash mobs," handbilling, solicitation, customer disruptions, manager delegations or confrontations, or associate engagement for a non-shopping purpose;
> 2. Entering on Walmart's private property in the State of Maryland without permission for any purpose other than shopping for and/or purchasing merchandise at Walmart's stores;
> 3. Interfering with, obstructing or blocking Walmart's and its customers' access to, and use of, easements and/or right-of-ways granted by

---

[6] The Union noted an interlocutory appeal from the order entering the preliminary injunction, pursuant to Md. Code (1973, 2013 Repl. Vol.), section 12-303(3(i) of the Courts and Judicial Proceedings Article. We dismissed that appeal as moot. *See United Food and Commercial Workers Int'l Union v. Wal-Mart Stores, Inc.*, No. 2111, Sept. Term, 2013 (filed July 7, 2015).

Walmart across or upon apron sidewalks and parking lots adjacent to stores for which Walmart has a "building only" lease; and

4. Engaging in any nuisance conduct off Walmart's private property which disrupts and/or interferes with Walmart customers' or associates' access to, or ability to move around or exit, Walmart private property in the State of Maryland[.]

The permanent injunction defined "Walmart's private property" to mean the interior of its stores and other facilities in Maryland and the "apron sidewalks, parking lots, and other areas on any parcel of property in Maryland that Walmart controls as owner or lessee."

## DISCUSSION

### I.

### Preemption

### (a)

The Supremacy Clause of the United States Constitution, Article VI, Clause 2, makes a properly enacted federal law "the supreme Law of the Land." Whether such a law preempts state law "fundamentally is a question of congressional intent." *English v. Gen. Elec. Co*., 496 U.S. 72, 78-79 (1990). State law may be preempted by federal law expressly, when Congress so states, or impliedly, either when Congress regulates a field so as to evidence its intent that it be occupied exclusively by federal law, or when federal law conflicts with state law. *Law v. Int'l Union of Operating Eng'rs Local No. 37*, 373 Md. 459, 466-67 (2003).

The NLRA, enacted in 1935, and amended and expanded in 1947, by the Labor Management Relations Act, implemented a new federal policy legitimizing "labor unionization and encouraging the practice of collective bargaining." *Sears, Roebuck &*

7

*Co. v. San Diego Cty. District Council*, 436 U.S. 180, 190 (1978).  It established a body of law governing labor relations and, in order "to achieve uniform as well as effective enforcement of the national labor policy," created the NLRB, an administrative agency vested with the power to implement the law.  *Vane v. Nocella*, 303 Md. 362, 367 (1985).

The NLRB's jurisdiction encompasses activities regulated by sections 7 and 8 of the NLRA.  *See Law*, 373 Md. at 468.  Section 7 affords employees organizational rights, including the right to unionize *and* the right not to organize.[7]  Section 8 establishes what constitutes unfair labor practices.  As relevant here, section 8(b)(1)(A) makes it an unfair labor practice for a "labor organization or its agents to . . . restrain or coerce . . . employees in the exercise of the rights guaranteed in [section 7 of the NLRA]."  29 U.S.C. § 158(b)(1).

"In enacting the NLRA, Congress never determined the precise extent to which state law must be displaced to achieve the unifying ends sought by the national legislature."  *Vane*, at 368.  Because Congress was silent, it has been left to the courts to

---

[7] Section 7 provides:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8(a)(3).

29 U.S.C. § 157.

ascertain the extent to which the NLRA preempts state common and statutory law, and other federal laws. *See San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 240 (1959) ("the aims and social policy of [the NLRA] were drawn with broad strokes while the details had to be filled in . . . by the judicial process").

*Garmon* is the seminal case about federal preemption of state law claims that are based on conduct regulated by sections 7 and 8 of the NLRA.[8] There, members of several unions that had negotiated unsuccessfully with Garmon to employ only union members peacefully picketed Garmon's place of business.[9] Garmon filed a ULP charge against the unions with the NLRB and also filed suit against the unions in state court, for statutory injunctive relief and tort damages. The NLRB declined jurisdiction, likely because "the amount of interstate commerce involved did not meet the [NLRB's] monetary standards in taking jurisdiction." *Id*. at 238. The state court declined to grant an injunction, because its injunction statute conflicted with the NLRA, but ruled that the picketing was an unfair labor practice, under section 8 of the NLRA, and awarded Garmon tort damages, under state law.

[8] There are "two distinct NLRA pre-emption principles." *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 748 (1985). *Garmon* preemption "protects the primary jurisdiction of the NLRB to determine in the first instance what kind of conduct is either prohibited or protected by the NLRA." *Id*. (footnote omitted). Preemption under *Lodge 76 v. Wisconsin Employment Relations Commission*, 427 U.S. 132, 147 (1976)(commonly referred to as "*Machinists*"), concerns "conduct left by Congress to the free play of economic forces[.]" *Machinists* preemption is not implicated in this case.

[9] The opinion does not state whether the picketing took place on Garmon's property or public property.

The case reached the United States Supreme Court, which held that the state law tort claim was preempted by the NLRA. The essence of the issue before the Court was which body, a court (state or federal) or the NLRB, was to decide whether an ULP had been committed. The Court explained that, "When an activity is *arguably subject to* § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the [NLRB] if the danger of state interference with national policy is to be averted." *Id.* at 245 (emphasis added). The Court concluded that, because the unions' conduct was "arguably within the compass of § 7 or § 8 of the [NLRA], the State's jurisdiction [wa]s displaced." *Id.* at 246. It recognized two exceptions from preemption, however. First, when the conduct the state is regulating or sanctioning "touch[es] interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we c[an] not infer that Congress ha[s] deprived the States of the power to act" ("local interest exception"); and second, when the activity is "a merely peripheral concern of the [NLRA]." *Id.* at 243-44.

Nearly twenty years later, in *Sears Roebuck & Co. v. San Diego District Council*, 436 U.S. at 180, the Supreme Court addressed whether an employer's state law trespass claim was preempted by the NLRA, under the principle articulated in *Garmon.* In protest over Sears's employing non-union carpenters, members of a local carpenters union engaged in peaceful picketing on Sears's privately owned walkways and parking lot. When the union members would not heed Sears's demand to leave its property, Sears sued the union in state court, "seeking an injunction [under state law] against the continuing trespass." *Id.* at 183. The court issued a preliminary injunction, and the union

10

appealed.  The California Court of Appeals affirmed, but the Supreme Court of California reversed, holding that because "the picketing was both arguably protected by § 7 and arguably prohibited by §8 [of the NLRA] . . . state court jurisdiction was pre-empted under the *Garmon* guidelines." *Id*. at 184.

The Supreme Court granted a writ of certiorari to decide "whether, or under what circumstances, a state court has power to enforce local trespass laws against a union's peaceful picketing." *Id.* at 184 (footnote omitted).  It reversed, upholding the injunction against the union's continuing trespass.  Observing that *Garmon*'s "arguably prohibited" and "arguably protected" formulations are not to be applied in a "literal, mechanical fashion," it explained that whether they apply "'must depend upon the nature of the particular interests being asserted and the effect upon the administration of national labor policies' of permitting the state court to proceed." *Id*. at 188-89 (quoting *Vaca v. Sipes*, 386 U.S. 171, 180 (1967)).  Although, ordinarily, state courts lack jurisdiction to redress conduct that is arguably prohibited by section 8 or arguably protected by section 7, they nevertheless may "enforce certain laws of general applicability even though aspects of the challenged conduct" are arguably prohibited by section 8 or protected by section 7. *Id*. at 194-95.  In particular, as it observed in *Garmon*, state courts retain jurisdiction to regulate and sanction "conduct that touches 'interests . . . deeply rooted in local feeling and responsibility[,]'" *i.e.*, when the local interest exception applies. *Id*. at 195 (quoting *Garmon*, 359 U.S. at 244)).

The Court explained that because the purpose of preemption under the "arguably prohibited" (section 8) prong of *Garmon* is to ensure that state courts will not interfere

11

with the NLRB's jurisdiction to decide controversies committed to it, the "critical inquiry" in deciding whether a state claim is preempted is "whether the controversy presented to the state court is identical to . . . that which could have been, but was not, presented to the [NLRB]." *Id*. at 197. When the controversy is not identical, the risk is slight that a state court's exercise of jurisdiction over it will interfere "with the unfair labor practice jurisdiction of the [NLRB,]" and the state law claim is not preempted. *Id*.

The *Sears* Court recognized that the union members' picketing on Sears's property was a continuing trespass under state law and also was conduct "arguably prohibited" by section 8 of the NLRA, either as "recognitional picketing," in violation of section 8(b)(7)(c), or as "work reassignment," in violation of section 8(b)(4)(D).[10] Because the crux of these violations is the union's aim in engaging in the conduct, if Sears had filed ULP charges, the NLRB's "concern would have been limited to the question whether the [u]nion's picketing had an objective proscribed by the [NLRA]." *Id.* at 186. Its decision would involve "complex factual and legal determinations [about objectives] *completely unrelated to the simple question whether a trespass had occurred*." *Id*. at 198 (emphasis added) (footnote omitted). "[T]he location of the picketing would have been irrelevant" to that determination. *Id.* at 186.

---

[10] "Recognitional picketing" is picketing by a union against an employer with the objective of forcing or requiring the employer to recognize a particular labor union as the representative of its employees. "Work reassignment" is coercing an employer to reassign work from employees in one labor union to employees in another labor union.

The Court concluded that, in the conflict between Sears and the union, the "controversy which Sears might have presented to the [NLRB was] not the same as the controversy presented to the state court." *Id*. at 198. In that circumstance, state court adjudication of the trespass claim would "create no realistic risk of interference with the [NLRB's] primary jurisdiction to enforce the statutory prohibition against unfair labor practices. *Id*. at 198. Accordingly, the state law trespass claim was not preempted under the "arguably prohibited" prong of the *Garmon* formulation. *Id*.[11]

**(b)**

In this appeal, the Union contends Walmart's state law claims for trespass and public and private nuisance are preempted by the NLRA because they are being advanced to redress conduct that is "arguably prohibited" by section 8(b)(1)(A) of the NLRA. It

---

[11] The *Sears* Court also held that the state law trespass action was not preempted under the "arguably protected" (section 7) prong of *Garmon*, notwithstanding that "[c]onsiderations of federal supremacy . . . are implicated to a greater extent when labor-related activity is protected than when it is prohibited." *Id*. at 200. By demanding that the union remove its pickets from the property, Sears had given the union an opportunity to seek a ruling from the NLRB that the picketing was protected under section 7 of the NLRA. The union did not do so, instead advising Sears that it would cease picketing on Sears's property "only . . . under compulsion of legal process." *Id*. at 202. According to the Court, this "intransigence" left Sears with three choices: let the picketing continue, evict the picketers by force, or bring a trespass action. *Id*. Bringing a trespass action was the only choice by which Sears could "obtain an orderly resolution of the question whether the [u]nion had a federal right to remain on its property." *Id*. Because Sears had no power to invoke the NLRB's jurisdiction to determine whether the picketing was arguably protected under the NLRA, and the union had chosen not to invoke the NLRB's jurisdiction, there was not sufficient justification for preemption of the state court jurisdiction.

In the case at bar, the Union did not assert that its conduct was arguably protected under section 7 of the NLRA.

13

asserts that Walmart conceded as much by first filing its ULP charge. It argues that the local interest exception does not apply because it is limited to conduct that is violent, threatening, or malicious, and the conduct of the demonstrators did not fit that bill. And, even if the exception is not so limited, it still does not apply because the legal controversies in Walmart's ULP charge and in its state law claims are identical, or, as the Union puts it, "fundamentally the same" because they are based on the same facts. The Union maintains, moreover, that the NLRB could have granted Walmart the same remedy it obtained from the circuit court. The Union argues that *Sears* is distinguishable because in the case at bar the trespass and nuisance claims concern the location *and* the nature of the demonstrators' activities, not just their location.

Walmart responds that trespassing and nuisance are not, in and of themselves, conduct that is "arguably prohibited" by section 8 of the NLRA. And, even if some of the Union's conduct during the demonstrations was arguably prohibited by section 8 (namely actions directed at employees in an effort to coerce them into unionizing), the local interest exception applies because the State has a fundamental interest in protecting the safety and property rights of its citizens and the legal controversy in the coercive conduct ULP charge was not identical to the legal controversy in the state law claims. It maintains that factual overlap does not make controversies identical. The Union is wrong, Walmart argues, that the local interest exception only applies to conduct that is violent, threatening, or malicious, and also is wrong that the NLRB has jurisdiction to enjoin trespassing on an employer's property. Walmart maintains that, as in *Sears*, the location of the arguably prohibited conduct was not important to its initial ULP charge,

14

but was essential to the trespass and nuisance claims. It argues that its state law claims are not preempted because their adjudication does not create any meaningful risk of interference with the NLRB's primary jurisdiction.[12]

**(c)**

Whether state claims are preempted by the NLRA is a question of law that we decide *de novo*. *See CSX Transp., Inc. v. Pitts*, 430 Md. 431, 450 n. 10 (2013) (federal preclusion ordinarily is a question of law).

Our preemption analysis begins with whether the Union's conduct that forms the basis for Walmart's state law claims is "arguably prohibited" by section 8 of the NLRB. The short answer to this question is that some of the conduct, in particular the confrontational acts by the demonstrators against managers and other employees, was arguably prohibited by section 8, as activities by a labor union to coerce employees to refrain from exercising their right not to unionize.

There is no basis for the Union's argument, however, that, by filing its initial ULP charge, Walmart conceded that all aspects of the demonstrators' conduct, including

---

[12] As mentioned, there is no contention in this case that the conduct of the Union demonstrators was "arguably protected" by section 7 of the NLRA. In *Lechmere, Inc. v. NLRB*, 502 U.S. 527 (1992), the Supreme Court held that, ordinarily, nonemployee union organizers have no right under section 7 of the NLRA to enter an employer's worksite to distribute union literature to employees. Therefore, "[a]s a rule, then, an employer cannot be compelled to allow distribution of union literature by nonemployee organizers on his property." *Id.* at 533. The only exception is when the location of the worksite and the residences of the employees put them "'beyond the reach of reasonable union efforts to communicate with them.'" *Id.* at 534 (quoting *NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105, 113 (1956)). That exception would not apply to the case at bar.

15

conduct constituting trespass or nuisance, is "arguably prohibited" by section 8(b)(1)(A), so that a state law claim for trespass or nuisance necessarily is preempted by the NLRA. The *Sears* case is dispositive on this point. The Court recognized that the picketing on Sears's private property by union members could have been the basis for ULP charges and also was a trespass under state law; and the fact that Sears could have brought ULP charges did not mean the trespass could not be remedied under state law. This same reasoning applies when a ULP charge actually is filed. Nothing in the Supreme Court's analysis in *Sears* suggests that had Sears brought ULP charges for recognitional picketing or work reassignment, its doing so would have amounted to a concession that every aspect of its controversy with the unions was within the sole jurisdiction of the NLRB to decide so that its trespass claim was preempted.

Because at least some of the Union's conduct was arguably prohibited by section 8 of the NLRA, one begins with the presumption, under *Garmon*, that Walmart's trespass and nuisance claims are preempted by federal law. If the local interest exception applies, the presumption is rebutted.[13] Whether that exception applies is a two-part inquiry. We first "determine whether a significant state interest exists in protecting the citizen from the challenged conduct." *Vane*, 303 Md. at 373. If there is no such interest, the exception does not apply. If there is, we then decide "whether the exercise of state

---

[13] Walmart does not argue that the exception for activity that is "a merely peripheral concern of the [NLRA,]" applies. *Garmon*, at 245.

16

jurisdiction entails 'little risk of interference with the regulatory jurisdiction of the [NLRB].'" *Id*. (quoting *Sears*, 436 U.S. at 196).

In the first prong of the inquiry, we find no merit in the Union's argument that the local interest exception does not apply here because the only significant state interest that will support application of that exception is the interest in protecting citizens from conduct that is violent, threatening, or malicious, and there was no such conduct here. To be sure, by the time the Supreme Court decided *Sears* in 1978, it had found the exception to apply when the arguably prohibited union conduct was violent, *see United Auto. Aircraft Workers of Am. v. Wisconsin Emp't Relations Bd.*, 351 U.S. 266 (1956); was calculated to provoke violence and was likely to do so unless restrained, *see Youngdahl v. Rainfair, Inc.*, 355 U.S. 131 (1957); and when the conduct satisfied the elements of state law claims for defamation, *see Linn v. United Plant Guard Workers of Am., Local 114*, 383 U.S. 53 (1966), intentional infliction of emotional distress, *see Farmer v. United Bhd. of Carpenters of Am.*, 430 U.S. 290 (1977), or malicious interference with lawful occupation, *see Int'l Union, United Auto. Workers v. Russell*, 356 U.S. 634 (1958).

The holding in *Sears* makes plain, however, that the local interest exception can apply not only to state claims brought to protect citizens from violence or likely violence, or from harm caused by torts with a component of malice, but also to state claims advanced to protect against harm to possessory rights in private property, in the absence of violence, threats of violence, imminent violence, or malicious acts. The picketing in *Sears* was peaceful and non-confrontational, and Sears's trespass claim was brought solely to remove the protesters from its private property. Even before *Sears* was decided,

17

Chief Justice Burger observed, in his concurring opinion in *Taggart v. Weinacker's Inc.*, 397 U.S. 223 (1970), that

> *[t]he protection of private property, whether a home, factory, or store, through trespass laws is historically a concern of state law. Congress has never undertaken to alter this allocation of power, and has provided no remedy to an employer within the [NLRA] to prevent illegal trespasses on his premises. . . .*
>
> Nothing in [*Garmon*] would warrant this Court to declare state-law trespass remedies to be ineffective and thus to remit to a person his own self-help resources if he desires redress for illegal trespassory picketing. *Garmon* left to the States the power to regulate any matter of "peripheral concern" to the NLRA or that conduct that touches interests "deeply rooted in local feeling and responsibility." [359 U.S. at 243]. *Few concepts are more "deeply rooted" than the power of a State to protect the rights of its citizens.*

*Id*. at 227-28 (emphasis added) (footnote omitted).[14] Thus, a state's power to regulate and sanction, by civil actions for trespass and nuisance, conduct that violates or interferes with the private property rights of its citizens is deeply rooted in local feeling and responsibility. *Cf. Prof'l Staff Nurses Ass'n v. Dimensions Health Corp.*, 110 Md. App. 270, 298-99 (1996) (noting in dicta that claims for trespass and nuisance, or claims premised on violence or threats of violence, are "deeply rooted" in local feeling); *see also Helmsley-Spear, Inc. v. Fishman*, 900 N.E.2d 934, 938 (N.Y. 2008) (holding that "[t]he tort of private nuisance, much like the tort of trespass, has historically been governed by state law. It cannot be said that Congress, by enacting the NLRA, intended to preempt states from protecting their citizens from obnoxious conduct").

---

[14] The concurring opinion in *Taggart* was to the dismissal of a writ of certiorari as having been improvidently granted.

Even if the Union's argument about the limitation of the local interest exception had some validity, which it does not, the potential for violence always exists when non-employee union members trespass on an employer's private property and create a nuisance that interferes with the employer's use and enjoyment of its property. In such a situation, if the state, by means of its police force, does not intervene when the protesting union members refuse to leave the employer's private property, the employer has "no alternative but to forcefully remove the [demonstrators]. We cannot know the amount of force that would have been necessary to remove them, but the threat of violence in such a situation is imminent." *Hood v. Stafford,* 378 S.W.2d 766, 770 (Tenn. 1964) (cited with approval in *Sears*, 436 U.S. at 185 n.7)*; see also Lawson Milk Co. v. Retail Clerks Union Local 698*, 394 N.E.2d 312, 316 (Ohio Ct. App. 1977) (state trespass action by business owner against non-employee union members was not preempted by NLRA notwithstanding stipulation that there was no violence or threat of violence; "simply because no violence erupted does not mean that the potential was absent or that the lack was not due to the company's restraint against using self-help. Every act of trespass has the potentiality of violence if the trespass is a breach of the peace."); *May Dep't Stores Co. v. Teamsters Union Local No. 743*, 355 N.E.2d 7, 11 (Ill. 1976) (state has an "historic and deeply rooted interest . . . in maintaining domestic peace through application of its trespass law remedies").[15]

---

[15] In *Weis Markets, Inc. v. United Food and Commercial Workers*, 85 Md. App. 284 (1991), we relied upon *Sears* to hold that the NLRA did not preempt a trespass action

(Continued…)

We turn to the second prong of the local interest exception analysis, which, in an "arguably prohibited" case, concerns whether the state court's exercise of jurisdiction risks interfering with the NLRB's primary jurisdiction. The Union argues interference is shown when the factual allegations underlying the potential (or actual) ULP charge are identical to the factual allegations underlying the state law claim; and here, the factual allegations are identical. Walmart counters that it is the legal controversies presented, not the factual allegations, that control, and the controversies presented in its original ULP charge and in its state law claims for trespass and nuisance are not the same.

Walmart is correct that we must focus on whether the controversies, not the factual allegations, are identical in deciding whether the circuit court's exercise of jurisdiction over the trespass and nuisance claims will interfere with the NLRB's primary jurisdiction. In *Sears*, the Supreme Court decided the issue of identity by comparing the "controversy" the NLRB would have been required to decide had Sears filed ULP charges for recognitional picketing and work reassignment to the "controversy" the state court was required to decide to resolve Sears's trespass claim. 436 U.S. at 198. Its analysis makes clear that the same core of factual allegations can give rise to

(…continued)

brought by a grocery store against the UFCW to enjoin the UFCW from peacefully picketing on the store's private property. The store's employees were not unionized and the aim of the pickets was to encourage the store's customers to shop elsewhere for that reason. The UFCW took the position that its picketing was arguably protected by section 7 of the NLRA (not arguably prohibited by section 8 of the NLRA, as is the case here). We relied upon the Supreme Court's arguably protected analysis in *Sears* to support our holding.

"controversies" before the NLRB and before a state court that are not identical in the sense that adjudication of the state claims will interfere with the NLRB's primary jurisdiction. 436 U.S. at 198. The Court later applied this principle when a ULP charge in fact was brought. *See Belknap, Inc. v. Hale*, 463 U.S. 491, 510 (1983) (no preemption when controversies raised in NLRB cross-charges concerning whether a strike was a ULP and whether the employer improperly replaced striking workers did not have "anything in common" with controversy before a state court in a suit for breach of contract and misrepresentation against the employer by strike replacement workers). *See also Linn*, 383 U.S. at 63-64 (no preemption of state court defamation claim brought by manager against union based upon statements in a leaflet even though leaflets were arguably prohibited and were the basis of a ULP charge filed by the employer); *Zavadil v. Alcoa Extrusions, Inc.*, 437 F.Supp.2d 1068, 1075 (D.S.D. 2006) ("Although the analysis of a state law claim may involve attention to the same factual considerations as a charge before the [NLRB], such parallelism does not require *Garmon* preemption."). Only when a ULP charge that the NLRB has heard and rejected on the merits is "recast as a state law claim" is "'[t]he risk of interference with the [NLRB's] jurisdiction . . . obvious and substantial[.]'" *Platt v. Jack Cooper Transp. Co.*, 959 F.2d 91, 95 (8th Cir. 1992) (quoting *Local 926 IUOE v. Jones*, 460 U.S. 669, 683 (1983)).

As originally filed, Walmart's ULP charge alleged that the Union's events at particular Walmart stores in Maryland violated the NLRA because the demonstrators "restrained and coerced employees in the exercise of their Section 7 rights (which includes the right to refrain from supporting the UFCW)." Walmart complained that the

21

events were orchestrated to "demonstrate to facility management in front of their employees that local management could not control its own work environment" and to persuade the Walmart sales force to "yield to the UFCW's wishes" and that the demonstrations were coercive because the protesters confronted managers, filmed employees reacting to the demonstrations, offered to pay employees for their support, and blocked ingress and egress so as to disrupt the employees in their work.

Of course, Walmart amended its ULP charge to eliminate all the allegations about the Maryland events. Even if it had not done so, the controversy before the NLRB and the controversy before the circuit court would not have been identical. On the one hand, the NLRB's concern would have been whether the confrontational activities by the Union demonstrators were coercive toward Walmart employees, in violation of their right to remain non-unionized. On the other hand, the circuit court's concern was whether the Union demonstrators' entry onto Walmart property for any non-shopping purpose, including to march about, make noise, and draw attention to themselves, exceeded the scope of Walmart's limited invitation to the public, constituting a trespass, *see Howard Cty Bd. of Educ. v. Cheyne*, 99 Md. App. 150, 155 (1994) (a business invitee under Maryland law is one "who enters a business establishment to purchase goods or services"), and invaded Walmart's interest in the use and enjoyment of its land, constituting a private nuisance.

To be sure, the arguably coercive conduct by the demonstrators was one aspect of the Union's conduct, so there was factual overlap between the allegations in the ULP and in the state claims. It was not material to the resolution of Walmart's state claims

22

whether the Union's non-shopping activities were undertaken to coerce Walmart employees in the exercise of their rights under the NLRA. Just as Walmart could prove a trespass claim against the Union demonstrators for entering Walmart's parking lot and setting up a yard sale, Walmart could prove such a claim against them for entering its property to blow whistles and sing songs about Walmart's labor practices. *See id.* (explaining that the pertinent inquiry is whether the person or persons claiming invitee status entered the business establishment with a purpose to benefit the landowner in some way); *see also UFCW v. Walmart*, 430 S.W.3d 508, 513 (Tex. Ct. App. 2014) (UFCW demonstrators were trespassing because they "used Wal-Mart property on a venture for their own purposes.").[16]

Like in *Sears*, Walmart sought to enjoin the Union from demonstrating *on its private property* (or, in the instance of the public nuisance, in a location blocking ingress and egress to and from its private property). Had the Union targeted Walmart employees by picketing, hand-billing, and forming flash mobs on public property or even on private property owned by another retailer near a Walmart store, and the objective of the conduct was to coerce Walmart employees in the exercise of their section 7 rights, Walmart still would have had grounds to file a ULP charge with the NLRB. It would not have had a

---

[16] In the Texas case, the Union noted an interlocutory appeal from the denial of its motion to dismiss one of the state court claims filed by Walmart relating to the same UFCW conduct. The motion to dismiss was premised on the Texas Citizens' Participation Act, a statute designed to protect free speech and free association rights. The issue of preemption was not before the Texas appellate court.

claim for trespass or nuisance against them, however. Here, the core of the controversy was that the Union was entering on Walmart's private property for a non-shopping purpose. Adjudication of that controversy by the circuit court would not realistically interfere with the NLRB's primary jurisdiction to regulate unfair labor practices under the NLRA.

Finally, we note that in cases such as this, where a labor organization that does not represent the employees enters on the employer's private property to demonstrate about its labor practices, without any arguably protected right to do so under the NLRA, it would make little sense if, by also engaging in conduct arguably prohibited by the NLRA, it could deprive the employer of the state law claims it otherwise could bring to remedy the conduct. In other words, a labor union cannot fairly say that because it violated the NLRA, it is no longer subject to state trespass and nuisance laws. Ordinarily, it would constitute trespass and nuisance for a labor organization not representing employees to enter a retail business to disrupt it; if the labor organization also does so to wrongly coerce employees into unionizing, it should not be free to commit wrongs prohibited by state law.

Accordingly, the circuit court properly denied the motion to dismiss.[17]

---

[17] As noted above, Walmart brought state law claims for trespass in response to the Union's demonstrations in Maryland, Florida, Arkansas, Colorado, Ohio, and Washington. The trial courts in all these states except Washington ruled against the Union on preemption and granted injunctions. In Washington, the trial court ruled in favor of the Union, and the Washington Court of Appeals affirmed. *Wal-Mart Stores, Inc. v. United Food and Commercial Workers Int'l Union*, 354 P.3d 31 (Wash. Ct. App.

(Continued…)

24

**II.**

**<u>Public Nuisance Standing</u>**

Walmart's public nuisance claim was premised on a single incident that took place on September 5, 2013. That day, the Union arranged for several buses filled with almost 200 demonstrators to go to the Landover Hills Walmart. In the middle of rush hour, a large group of these demonstrators exited the buses and walked onto nearby Route 450, blocking traffic for about 20 minutes. During that time, hundreds of cars attempted to

---

(…continued)
2015), *cert. denied* 367 P.3d 1084 (2016). It reasoned that the local interest exception only applies to "'torts' involving 'conduct marked by violence and imminent threats to public order,'" *id*. at 37 (quoting *Garmon*, 359 U.S. at 244); and because Walmart did not allege that the Union had engaged in violent conduct or had made threats of violence, the allegations did not "rise to the level of a deeply rooted local interest." *Id*. at 37. It also reasoned that, unlike in *Sears*, the Union's "conduct [was] central to Walmart's trespass theory." 354 P.3d at 36. Emphasizing that Walmart "objected to both the [demonstrations] and the location of the [Union's] conduct," the court concluded that because Walmart had filed a ULP and could refile the charges arising from the conduct in Washington State, it was not without "legal recourse" if its trespass action were to be dismissed. *Id*.

We agree with Walmart's position in the case at bar that the Washington intermediate appellate court incorrectly focused on the identity of *facts* alleged in the ULP and the first amended complaint, when it should have focused on the identity, or lack of identify, of the *legal controversy*.

Very recently, the Colorado Court of Appeals issued an opinion affirming the trial court's decision that Walmart's state law claims were not preempted by the NLRA. *Wal-Mart Stores, Inc. v. United Food and Commercial Workers International Union*, 2016 WL 2605737 (filed May 5, 2016). The court held that the controversy Walmart presented to the NLRB in its ULP charge and the controversy it presented to the state court in its trespass claim were not the same, and therefore the state law claims were not preempted. (Walmart furnished the Colorado Court of Appeals opinion to this Court in a recently filed motion; the Union opposed the motion. Obviously, this Court can take into account in our legal analysis recently filed relevant opinions by other courts, so the motion is granted.)

25

use Walmart's private access road and parking lot as a detour around the blockage. As a result, the access road became jammed with traffic, making customers' access to the store virtually impossible.

As documented in its memorandum opinion, the trial court found as a fact that the Union intentionally orchestrated this major disruption. As the court put it, the Union "planned and conducted a demonstration that blocked a major intersection on Highway 450 by a Walmart store in Landover Hills, causing a traffic jam on Highway 450 and in Walmart's parking lot and preventing Walmart customers from entering and exiting Walmart's parking lot." The court found that the Union's "blocking or interference with vehicle and pedestrian traffic on public roadways adjacent to Walmart stores . . . constitute[d] an enjoinable nuisance"; and that Walmart "ha[d] established a 'special injury' to entitle it to an injunction against demonstrations on public property (like [the September 5, 2013 Landover Hills demonstration]) that block or interfere with its customers' access to Walmart stores and parking lots."

The Union contends the trial court erred in ruling that Walmart suffered a special injury different in kind from that suffered by the public generally, so as to give it standing to sue for public nuisance. Walmart responds that the law is clear that when a defendant blocks a public road, adjacent property owners whose access to their property is obstructed have standing to sue for public nuisance.

Section 821C of the *Restatement (Second) of Torts* addresses the standing requirements for a claim of public nuisance. As relevant here, it explains that the plaintiff must "have suffered harm of a kind different from that suffered by other

members of the public exercising the right common to the general public that was the subject of interference." *See also Ray v. Mayor of Baltimore*, 430 Md. 74, 94 (2013) (citing section 821C). Comment f to section 821C provides a helpful illustration:

> The right of access to land, that is, the right of reasonable and convenient ingress and egress, is itself a property right in the land. If the public nuisance interferes with immediate ingress and egress to the plaintiff's land, the nuisance is a private as well as a public one and the harm suffered by the plaintiff is particular harm differing in kind from that suffered by the general public, so that the plaintiff can recover for the public nuisance. Complete deprivation of access, so that the land of the plaintiff is completely cut off is obviously sufficient particular damage. But the deprivation need not be complete and it is enough that the ingress or egress is made unreasonably burdensome or inconvenient or unsafe. Access by a particular entry is still a valuable property right even though there may be another entry left open; and the fact that there is access from the north left open does not prevent the recovery when the plaintiff is deprived of access from the south.

*Restatement (Second) of Torts* § 821C cmt. f (1979); *see also Smith v. Shiebeck*, 180 Md. 412, 421-22 (1942) (plaintiffs stated a claim for public nuisance when they alleged that adjacent property owners erected a fence obstructing a public right-of-way that was the most convenient means to access the plaintiffs' property).

In the case at bar, the evidence on the summary judgment record showed that the Union obstructed a public road—Route 450—directly in front of the entrance to the Landover Hills Walmart store and that, to avoid the obstruction, cars were forced to detour onto Walmart's private access road, hindering customers and employees from exiting or entering Walmart's property. This plainly was an injury that was different in kind from any injury suffered by the public generally. The circuit court did not err in so holding.

27

**III.**

**Scope of Permanent Injunction**

The Union challenges the scope of the circuit court's permanent injunction on two bases. First, it argues that Walmart did not have a right to exclusive possession of exterior common areas that it owned, but were subject to non-exclusive easements; therefore, absent a showing by Walmart that the Union's demonstrations in those areas unreasonably interfered with Walmart's use of the areas, the Union could not be prohibited from demonstrating in those areas. Second, the injunction is overly broad because it prohibited Union members from entering Walmart's property for any non-shopping purpose, not just for the purpose of engaging in demonstrations.

Walmart responds that it retains exclusive possession of all exterior property it owns or leases. Its reciprocal business-use cross-easements extended to neighboring tenants and their invitees. It did not have to prove unreasonable interference in order to exclude demonstrators or protestors from its property. Moreover, the court properly enjoined the Union from entering Walmart's property for any non-shopping purpose because the undisputed evidence showed that the Union had engaged in small scale handbilling and manager/associate confrontations that exceeded the scope of the limited business invitation to shop.

*A.  Common Areas Subject to Easements*

At all but three of its Maryland locations, Walmart owns or leases the tract of land on which its retail store is situated, the parking lot, the apron areas, and the sidewalks.[18] Walmart sought a permanent injunction "prohibiting [the Union] from coming onto property over which [Walmart] maintains a right to exclude," defined to mean "100 percent of its interior retail space . . . and the parking lots, apron areas and sidewalks it owns or leases (under a ground lease) outside the front entrances to its stores."[19] These areas include parking lots and sidewalks over which Walmart has granted "a non-exclusive easement for vehicular and pedestrian ingress and egress over and across" to adjacent property owners, their tenants, and their customers.

As relevant here, in its written findings of fact and conclusions of law, the circuit court stated:

> At a few stores or other facilities located within a shopping center or building that contains other retail shops or businesses, Walmart has granted reciprocal cross-easements over portions of its parking lot and sidewalk areas (which it owns or controls as lessee) to provide access to those shops and businesses' customers and employees for the purpose of shopping and conducting business at those establishments. *Those cross-easements do not permit [the Union] (or any other group) to use Walmart's parking lot and sidewalk areas for any reason other than to shop for and purchase merchandise (or to conduct authorized business) at other retail shops or businesses located in the shopping center.*

---

[18] At the other three locations—Pocomoke City, Towson, and Randallstown—Walmart has a building-only lease.

[19] Walmart conceded that it did not have the right to exclude the Union (or others) from portions of the parking lots and apron areas at the Pocomoke City, Towson, and Randallstown locations.

(Emphasis added.) The court ruled that, as a matter of law, Walmart has a right to "exclude trespassers from property it owns or leases even where it grants specific business-use easements or rights-of way to neighboring tenants in a shopping center." Thus, the Union demonstrators who used "the easements over Walmart's parking lots and sidewalks" for a purpose other than to "provide access to other retail establishments" committed a trespass.

The Union argues that there was no evidence that it unreasonably interfered with Walmart's use of those portions of its property subject to the easements; therefore, Walmart could not prove an action for trespass on those parts of its property and was not entitled to an injunction covering them. Walmart responds that the easements were limited to business-use and, as such, its right to exclude any non-business use of its property was not diminished. For this reason, it did not need to prove an unreasonable interference with its use of those parts of its property. We agree with Walmart.

> This Court has explained that
>
> "trespass is a tort involving 'an intentional or negligent intrusion upon or to the possessory interest in property of another.'" *Mitchell v. Baltimore Sun Co.*, 164 Md. App. 497, 508, 883 A.2d 1008 (2005) (quoting *Ford v. Baltimore City Sheriff's Office*, 149 Md. App. 107, 129, 814 A.2d 127 (2002)), *cert. denied*, 390 Md. 501, 889 A.2d 418 (2006). "In order to prevail on a cause of action for trespass, the plaintiff must establish: (1) an interference with a possessory interest in his property; (2) through the defendant's physical act or force against that property; (3) which was executed without his consent." *Id*.

*Royal Inv. Grp., LLC v. Wang*, 183 Md. App. 406, 444-45 (2008) (alteration omitted).

"A conditional or restricted consent to enter land creates a privilege to do so only in so far as the condition or restriction is complied with." *Restatement (Second) of Torts*,

30

§ 168 (1965). Thus, "[a] consent restricted to entry for a particular purpose confers no privilege to be on the land for any other purpose." *Id.* at cmt. b.

In the instant case, Walmart granted adjacent property owners, their tenants, and their customers a right of way over its parking lots and sidewalks for the purpose of ingress and egress to the adjacent properties. Having consented to entry onto its land for that limited purpose, it did not give up its right to exclude from its property others entering for a non-business purpose, such as the Union demonstrators who paraded and otherwise protested on its common areas, even if those activities did not unreasonably interfere with Walmart's use of the property.[20]

## B. *Enjoining all non-shopping activity*

The Union argues that the trial court's decision to enjoin all non-shopping activity on its part was not supported by the evidence; "at most," the court should have enjoined only "demonstrations." This is so, it maintains, because Walmart "focused" on the demonstrations in its motion for summary judgment and because Walmart did not allege that it suffered irreparable harm from the other non-shopping conduct.

Walmart responds that the uncontested evidence on the summary judgment record showed that the Union engaged in a multitude of objectionable non-shopping activities in Walmart's stores and on its property. It staged large and small scale flash mobs and

---

[20] The cases the UFCW cites hold that a servient estate holder may not interfere with the dominant estate holder's use of a right-of-way for, by example, erecting a building or storing property at that location, are not on point. There is no claim that Walmart, the servient estate holder, has interfered with its adjacent tenants' use of the right-of-way.

demonstrations at stores, engaged in hand-billing, solicited customers and employees, disrupted customers, and confronted managers on the floor. All of this activity exceeded the scope of the limited business invitation extended by Walmart to the public, causing irreparable harm to Walmart's business. The Union does not possess a right, under the First Amendment or otherwise, to enter onto Walmart's private property to engage in "non-obstructive and non-disruptive speech" unrelated to the limited business invitation to shop at the store. *See Lloyd Corp. v. Tanner*, 407 U.S. 551, 564-65 (1972) (noting that the Supreme Court "has never held that a trespasser or an uninvited guest may exercise general rights of free speech on property privately owned and used nondiscriminatorily for private purposes only," and vacating an injunction prohibiting a shopping center from enforcing a "no handbilling" policy). We agree with Walmart that the circuit court did not err in enjoining all non-shopping activity by the Union.[21]

## IV.

## Anti-Injunction Act

The trial court ruled that this case does not involve a "labor dispute" and therefore is not within the purview of Maryland's Anti-Injunction Act ("the Act"); and even if the Act applies, Walmart satisfied its stringent requirements. The Union contends the court's ruling was erroneous in both respects. Walmart responds that the court correctly

---

[21] The injunction plainly does not extend to idle conversation between Union-affiliated customers, on the one-hand, and customers, associates, or managers, on the other hand, *while shopping* in a Walmart store. Nor does it extend to activities that are incidental to shopping, such as a Union member's picking up a shopper in a Walmart parking lot or attending a Girl Scout cookie sale with children at a Walmart store.

32

determined that conduct constituting trespass and nuisance by third parties is not a labor dispute and, in any event, Walmart was entitled to an injunction under the Act.

Enacted in 1935, Maryland's Anti-Injunction Act, Md. Code (1991, 2008 Repl. Vol.), section 4-314 of the Labor and Employment Article ("LE"), places "restrictions on the power of [an] equity court[] to grant injunctions in labor disputes." *District 1199E v. Johns Hopkins Hosp.*, 293 Md. 343, 345 (1982); *see also Vu v. Allied Foot & Ankle*, 180 Md. App. 663, 682 (2008) ("The anti-injunction statutes of the 1930's and 1940's, including the Maryland Act, were designed to limit and, in some circumstances, circumscribe entirely the remedy of injunction as it was being used by employers to suppress labor organization."). As currently codified, the Anti-Injunction Act states that, "in a case that involves or grows out of a labor dispute," a court may not grant preliminary or permanent injunctive relief unless certain heightened criteria are met. A "labor dispute" is

> any controversy, regardless of whether the disputants stand in the proximate relation of employee or employer, concerning:
>
> (1) terms or conditions of employment;
> (2) employment relations;
> (3) the association or representation of persons in negotiating, setting, maintaining, or changing terms or conditions of employment; or
> (4) any other controversy arising out of the respective interests of employee or employer.

LE § 4-301(c).

We agree with the trial court that this case does not "involve[] or grow[] out of a labor dispute." The Union is not and does not seek to be the collective bargaining

representative for Walmart's employees and has expressly disclaimed any interest in organizing Walmart's employees. Walmart filed suit against the Union, but specifically excluded as defendants any current Walmart employees. The controversy before the circuit court concerned the right of third parties to demonstrate on the private property of a business. Although the ultimate goal of the Union's demonstrations was to encourage Walmart employees to unionize or to improve the terms and conditions of their employment, that goal was not at issue in the case before the circuit court.

Even if this case *did* involve a labor dispute, we nevertheless would affirm the circuit court's ruling that the Anti-Injunction Act criteria were met. The Union asserts that Walmart failed to prove three of the requirements of the Anti-Injunction Act: 1) "unless [the court] grants the relief requested, the property of the plaintiff will be injured substantially and irreparably" (LE section 4-314(3)(ii)); 2) Walmart lacked an "adequate remedy at law" (LE section 4-314(3)(v)); and 3) the police failed to or were unable to adequately protect Walmart's property (LE section 4-314(3)(vi)).

The Union maintains that Walmart was required to present evidence of property damage, not damage to "business, goodwill, or similar proprietary or intangible interest," to satisfy LE section 4-314(3)(ii). Walmart responds that the court's findings that the damage to Walmart's business as a result of the protests could not be quantified; that store managers received complaints from customers about the demonstrations; that customers waiting in line to check out left the store without making any purchases as a result of the demonstrations; and that Walmart associates were pulled away from assisting customers to respond to demonstrators amply demonstrated that Walmart's

34

"property . . . [would] be injured substantially and irreparably" if an injunction were not granted. We agree. The interference with Walmart's right to operate its business free from loud and disruptive demonstrations that block customer ingress and egress and otherwise prevent customers from shopping in Walmart's stores amounts to substantial and irreparable harm to its "property" within the meaning of LE section 4-314(3)(ii).

The Union argues that Walmart did not lack an adequate remedy at law because it could have refiled its ULP with the NLRB to redress the conduct. For the reasons already discussed, however, the NLRB's jurisdiction did not extend to the trespassory and nuisance nature of the conduct. In any event, as Walmart points out, a showing of irreparable harm presumes that there is no adequate remedy at law. *See State Comm'n on Human Relations v. Talbot Cty.*, 370 Md. 115, 141 (2002).

Finally, the Union maintains that the undisputed material facts showed that the police promptly responded each time they were called by Walmart and they were able to remove demonstrators or persuade them to leave. Walmart responds that, because the Union demonstrations are held without notice at different stores and because it takes time for the police to arrive on the scene and disperse them, the police cannot adequately protect Walmart's business. Moreover, there was uncontested testimony from a police officer that it is often the policy of the police not to intervene in these types of peaceful demonstrations.

Walmart presented sufficient evidence of harm to its ability to carry on its business that could not be adequately protected against by police. The Union's actions took place without notice and were designed to be disruptive. There was evidence that

35

customers responded to the demonstrations on several occasions by abandoning their carts and leaving the store without checking out. Thus, even if the police were able to respond within minutes and were willing to intervene, Walmart's business may already have been harmed. For all of these reasons, the circuit court did not err by ruling that Walmart satisfied the Anti-Injunction Act criteria.

> **JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY THE APPELLANTS.**

36