IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

UNITED FOOD AND COMMERCIAL,
ETC., ET AL.,

      Appellants,

v.                               Case No.  5D15-1434

WAL-MART STORES, INC.,

      Appellee.

_____/

Opinion filed May 20, 2016

Appeal from the Circuit Court
for Orange County,
Alice Blackwell, Judge.

Richard P. Siwica, Egan, Lev & Siwica,
P.A., Orlando, and George Wiszynski and
Joey James Hipolito, United Food and
Commercial, International Union,
Washington, D.C., for Appellants.

Elliot H. Scherker, Brigid F. Cech Samole,
Jay A. Yagoda, of Greenberg Traurig,
P.A., Miami, Ronald M. Schirtzer, of
Greenberg Traurig, P.A., Orlando, and
Steven D. Wheeles and Douglas D.
Janicik of Steptoe & Johnston, LLP,
Phoenix, Arizona, for Appellee.

COHEN, J.

Walmart and the United Food and Commercial Workers International Union,

OURWalmart, et al., (collectively, "UFCW"), are engaged in strategic jurisdictional

battles throughout the nation. Walmart brought this action against UFCW seeking an injunction against future trespasses and nuisances. The issue on appeal is whether Walmart's trespass claim, based on Florida law, is preempted by the National Labor Relations Act ("NLRA"). 29 U.S.C. §§ 151-169 (2016).[1] The trial court found that Walmart's claim was not preempted because it fell under the exception to NLRA preemption recognized in Sears, Roebuck, & Co. v. San Diego County District Council of Carpenters, 436 U.S. 180, 199-208 (1978), and entered an injunction on summary judgment against further trespasses by UFCW. We agree and affirm.

UFCW is a national labor organization that represents grocery, retail, meat-packing, and food-processing workers. OURWalmart is UFCW's subsidiary labor organization, which includes current and former employees of Walmart. UFCW staged a number of demonstrations and mass actions, both inside and outside of Walmart stores, affecting Walmart employees, managers, and shoppers alike. UFCW has stipulated that it would continue such actions absent an injunction. Although UFCW's demonstrations were loud and disruptive, they were not violent.[2] During various demonstrations,

---

[1] In addition to the preemption issue, UFCW argues that Walmart cannot seek an injunction over parking lots and sidewalks it shares with other businesses, and that Walmart lacked standing to pursue a public nuisance claim. We find these issues lack merit and affirm without further comment.

Additionally, Walmart's public nuisance claim was based on the fact that UFCW blocked access into and out of its parking lot at an Orlando store. UFCW concedes that if Walmart had standing to bring the nuisance claim, that claim would not be preempted by the NLRA under a long-standing exemption for "interests . . . deeply rooted in local feeling and responsibility." San Diego Bldg. Trades Council, Millmen's Union 2020 v. Garmon, 359 U.S. 236, 244 (1959). Accordingly, we address UFCW's preemption argument only as to Walmart's trespass claim.

[2] The protests included a variety of practices, such as entering Walmart stores, filling shopping carts full of merchandise and using them to block other customers' access to the cash registers, confronting Walmart managers, chanting slogans, playing

Walmart was forced to call the police to remove UFCW from its stores; Walmart later sent UFCW written, formal notice that it was not allowed to enter Walmart property for purposes other than shopping.

The strategic maneuvering began when Walmart filed unfair labor practice charges on behalf of its employees against UFCW with the National Labor Relations Board ("NLRB"), alleging that UFCW violated its employees' rights under section 8(b)(1)(A) of the NLRA.[3] Walmart later withdrew these charges before the NLRB took action on the matter, opting instead to pursue trespass actions in state court. This same strategy has been repeated throughout the country. Walmart is currently seeking similar injunctions in Arkansas, California, Colorado, Maryland, and Texas. One appellate court, in the state of Washington, has ruled that Walmart's claims are preempted. Wal-Mart Stores, Inc. v. UFCW, 354 P.3d 31, 33 (Wash. Ct. App. 2015), review denied, 367 P.3d 1084 (Wash. 2016).

Preemption raises a pure question of law and is reviewed de novo. W. Fla. Regional Med. Ctr. v. See, 79 So. 3d 1, 8 (Fla. 2012).[4] The NLRA contains no preemption clause yet is considered to have one of the broadest preemptive scopes of any federal litigation. See Benjamin I. Sachs, Despite Preemption: Making Labor Law in

---

loud music, speaking though bullhorns, and projecting videos onto the walls of Walmart's stores.

[3] Section 8(b)(1)(A) of the NLRA is codified at 29 U.S.C. § 158 (2016) and makes it "an unfair labor practice for a labor organization or its agents (1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title." Section 157, in turn, gives employees the right to refrain from participating in union activities such as collective bargaining and concerted action. 29 U.S.C. § 157 (2016).

[4] Federal law preempts state law based on the U.S. Constitution's Supremacy Clause. Art. VI, U.S. Const. ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby . . . .").

Cities and States, 124 Harv. L. Rev. 1153, 1154, 1164-69 (2011) (discussing the impact of labor-law preemption on state and local lawmaking). The U.S. Supreme Court has held that the NLRA prohibits state regulation of conduct only arguably protected or prohibited by the NLRA. San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon, 359 U.S. 236, 245 (1959).[5] The broad doctrinal rule of Garmon rests on a belief that Congress, in enacting the NLRA, intended to occupy the entire field of labor relations, leaving little room for state law to regulate, and to give the NLRB primary jurisdiction to adjudicate labor disputes and develop a national labor policy. See id. at 241–43; see also Michael H. Gottesman, Rethinking Labor Law Preemption: State Laws Facilitating Unionization, 7 Yale J. on Reg. 355, 358-59 (1990) (suggesting alternative interpretations of the NLRA's broad field preemption).

The leading exception to the "arguably protected" standard from Garmon, in the context of state-law trespass actions, comes from Sears, 436 U.S. at 207-08. In Sears, the union picketed on Sears' property to publicize the company's decision to use non-union carpenters. Id. at 182. While the union could have brought an unfair labor-practice charge against Sears seeking the protection of section 7 of the NLRA for its picketing, Sears could not have brought an action with the NLRB against the union seeking specifically to enjoin the union's trespass. Id. at 201-02. The proceeding with the NLRB would have instead focused on the protected or prohibited character of the picketing itself without addressing the union's alleged violations of state law. Id. at 198, 198 n.28. The Court conceded that there was still a potential risk that the picketing could be

---

[5] "When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." Garmon, 359 U.S. at 245.

protected under the NLRA—that the picketing was arguably protected—yet it held that state jurisdiction is appropriate when: (1) the party alleging that its conduct is protected elects not to bring a claim before the NLRB; (2) the party alleging that the conduct is not protected cannot present its claim to the NRLB; and (3) the claim to protection for the conduct is weak, as is often the case for trespasses. Id. at 203-08; see also Gottesman, supra, at 378 n.94.

UFCW seeks to distinguish Sears by arguing that here, unlike in Sears, Walmart had access to the NLRB, as evidenced by Walmart having initially brought a complaint with NLRB only to withdraw that claim and seek its remedy in state court. UFCW also points out that in Sears, the union's conduct in picketing was entirely peaceful and the state-law controversy focused exclusively on the location of the picketing, not the union's conduct itself.[6] UFCW argues, then, that the Sears exception is not applicable when the employer had actual access to the NLRB to litigate its claim and where the state-law trespass claim goes beyond merely regulating the location of a protest and intrudes into regulating the actual conduct of the picketing.

The critical question is whether the action Walmart brought in state court is the same as the one it could have brought with the NLRB. See Belknap, Inc. v. Hale, 463 U.S. 491, 510 (1983) ("[A] critical inquiry in applying the Garmon rules, where the conduct at issue in the state litigation is said to be arguably prohibited by the Act and

---

[6] The Court in Sears explained:

Sears asserted no claim that the picketing itself violated any state or federal law. It sought simply to remove the pickets from its property to the public walkways, and the injunction issued by the state court was strictly confined to the relief sought. Thus, as a matter of state law, the location of the picketing was illegal but the picketing itself was unobjectionable.

436 U.S. at 185.

hence within the exclusive jurisdiction of the NLRB, is whether the controversy presented to the state court is identical with that which could be presented to the Board."). If the state-law controversy is not identical to the controversy the party seeking state-court jurisdiction could have brought before the NLRB, then the party invoking state-court jurisdiction cannot be said to have access to the NLRB to bring its claim. In making that determination, we focus not on the formal elements of the claims or the state law's general applicability, but rather on whether the claims are identical in some "fundamental respect," and examine the inquiries dispositive of each controversy.[7] See Local 926, Int'l Union of Operating Eng'rs, AFL-CIO v. Jones, 460 U.S. 669, 682 (1983) (finding preemption based on the fundamental similarity of plaintiff's state-law and NLRA claims).

---

[7] The Court in Sears explained:

The critical inquiry, therefore, is not whether the State is enforcing a law relating specifically to labor relations or one of general application but whether the controversy presented to the state court is identical to (as in [Garner v. Teamsters, 346 U.S. 485, 490-91 (1953)]) or different from (as in [Farmer v. Carpenters, 430 U.S. 290, 297-301 (1977)]) that which could have been, but was not, presented to the Labor Board. . . .

In the present case, the controversy which Sears might have presented to the Labor Board is not the same as the controversy presented to the state court. If Sears had filed a charge, the federal issue would have been whether the picketing had a recognitional or work-reassignment objective; decision of that issue would have entailed relatively complex factual and legal determinations completely unrelated to the simple question whether a trespass had occurred. Conversely, in the state action, Sears only challenged the location of the picketing; whether the picketing had an objective proscribed by federal law was irrelevant to the state claim. Accordingly, permitting the state court to adjudicate Sears' trespass claim would create no realistic risk of interference with the Labor Board's primary jurisdiction to enforce the statutory prohibition against unfair labor practices.

436 U.S. at 197-98.

6

Walmart's NLRA claim alleged UFCW violated its employees' section 7 right to refrain from participating in collective action. The focus of that claim, had Walmart pursued it, would have been on the objective of UFCW's protests—whether its goal was protected or prohibited under the NLRA—and their effect on Walmart's employees. Cf. Sears, 136 U.S. at 201 n.31 ("[I]n deciding the unfair labor practice question, the Board's sole concern would have been the objective, not the location, of the challenged picketing."); see also Millwrights & Machinery Erectors Union Local 102, 317 N.L.R.B. 1099, 1102 (1995) (stating that a section 8(b)(1)(A) claim requires a showing that conduct "affected 'employees'"). It would not have addressed Walmart's allegation that UFCW exceeded the scope of Walmart's general easement to the public to enter its property for the purposes of shopping.

The resolution of Walmart's NLRA claim would have also involved complex factual issues and nuanced determinations not just of the effect of UFCW's conduct on Walmart's employees and UFCW's objectives in protesting, but also of the status of the various participants as non-employees, employees from other stores, and employees at the store in question. See, e.g., ITT Indus., Inc. v. N.L.R.B., 413 F.3d 64, 74-77 (D.C. Cir. 2005) (reviewing and endorsing the NRLB's application of its so-called Hillhaven[8] test to establish a derivative right for employees from off-site facilities to enter an employer's parking lot to distribute handbills). The NLRB's final determination may have turned on any one of these factors unrelated to the question of trespass. Yet the central inquiry would have always been on balancing whatever protections the NRLA would have afforded UFCW against only the rights of Walmart's employees.

---

[8] First Healthcare Corp., 336 N.L.R.B. 646 (2001).

In contrast, Walmart's trespass claim focused on the relatively straightforward question of whether UFCW's actions exceeded the scope of the general easement provided to the public to come on to Walmart's property to shop. See Am. Quick Sign, Inc. v. Reinhardt, 899 So. 2d 461, 464 (Fla. 5th DCA 2005) ("[An easement] is an interest that gives to one other than the owner a right to use the land for some specific purpose."). The trespass claim did not require the trial court to address whether UFCW's actions restrained or coerced Walmart employees; thus, it did not pose a risk of intruding on issues of federal labor law. UFCW's impact on Walmart's employees was in no way dispositive, nor necessarily relevant, to Walmart's trespass action. Although UFCW is correct that some of the allegations in Walmart's trespass complaint went beyond the mere location of the protest, the trespass claim required only a finding that UFCW's conduct exceeded the scope of Walmart's easement to the public to enter its property for the purposes of shopping. See Restatement (Second) of Torts § 168 (Am. Law Inst. 1965) ("A conditional or restricted consent to enter land creates a privilege to do so only in so far as the condition or restriction is complied with.").

The remedy in this case was likewise circumscribed to prohibiting future trespasses and does not affect UFCW's right to peacefully protest outside of Walmart's property or to contact Walmart's employees through other means than direct access to Walmart's property. Cf. Sears, 436 U.S. at 183 n.5. Although the NLRB has the power to obtain injunctions to halt unfair labor practices, that power is still predicated on the finding of an unfair labor practice, not a mere trespass.[9] Walmart's NLRA claim would

---

[9] The NLRB has the power to seek injunctions under 29 U.S.C. § 160(j) (2016), which reads, in pertinent part:

not have focused on Walmart's right to control who enters and exits its property, and its protections from nuisances and private torts under Florida law. Cf. Farmer v. United Bhd. of Carpenters & Joiners of Am., Local 25, 430 U.S. 290, 305-07 (1977) (holding that a state cause of action for intentional infliction of emotional distress was not preempted).

In addition, UFCW's preemption argument could leave Walmart without any remedy for violations of state law. It would have been possible here, as in Sears, for the NLRB to resolve Walmart's claim and find that UFCW was not prohibited from engaging in these demonstrations without determining whether the demonstrations were actually protected under section 7. Walmart then would have been without a remedy as its NLRA claim would have been unavailing and its state-law trespass claim would have been preempted under Garmon's arguably-protected test.[10] We find, then, that while UFCW had access to the NLRB to determine whether its conduct was protected and

---

The Board shall have power, upon issuance of a complaint as provided in subsection (b) of this section charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order.

Id.

[10] The Court recognized a similar potential problem in Sears:

[T]he Board could conclude that the picketing was not prohibited by either § 8(b)(4)(D) or § 8(b)(7)(C) without reaching the question whether it was protected by § 7. If the Board had concluded that the picketing was not prohibited, Sears would still have been confronted with picketing which violated state law and was arguably protected by federal law. Thus, the filing of an unfair labor practice charge could initiate complex litigation which would not necessarily lead to a resolution of the problem which led to this litigation.

436 U.S. at 198 n.28.

9

chose not to exercise it, Walmart did not have access to the NLRB to present its trespass claim.

The final element we consider is whether UFCW's claim to protection under the NLRA is weak. The Court in Sears pointed out that lack of access to the NLRB does not "foreclose the possibility that pre-emption may be appropriate." Sears, 436 U.S. at 203; see also Fed. Sec., Inc., 359 N.L.R.B. No. 1 at 11, 2012 WL 5473770 at *15 (2012). The Court explained that preemption may be required, even when one party lacks access to the NLRB, when there is a significant possibility that the conduct at issue is protected under the NLRA. In such instances, the risk of state-court misinterpretation of federal labor law may be too great to allow a state-court action to proceed. The Court concluded that "the acceptability of 'arguable protection' as a justification for pre-emption in a given class of cases is, at least in part, a function of the strength of the argument that § 7 does in fact protect the disputed conduct." Sears, 436 U.S. at 203.

Although, similar to the situation in Sears, there is some possibility that UFCW's violation of Florida law would have been protected under the NLRA, we believe that claim to protection is weak. As the Court held in Sears, "while there are unquestionably examples of trespassory union activity in which the question whether it is protected is fairly debatable, experience under the Act teaches that such situations are rare and that a trespass is far more likely to be unprotected than protected." Sears, 436 U.S. at 205. UFCW's claim here is even weaker than the claim for protection in Sears as UFCW's conduct involved mainly the trespass of non-employees, who rarely have the right to access an employer's property. See Lechmere, Inc. v. NLRB, 502 U.S. 527, 540-41 (1992) (holding that nonemployees rarely have the right to enter employer's property for organizational efforts absent extraordinary circumstances that make contacting the

10

employees in other means nearly impossible). UFCW has disavowed any attempt to organize Walmart's employees and was not seeking to publicize an election or other pending union action.

We emphasize, in conclusion, that UFCW had, at all times prior to and even during this litigation, access to the NLRB to pursue the protection of the NLRA. We are cognizant of the expertise of the NLRB in making determinations about national labor policy. We likewise recognize that property law exists in some tension with federal labor law and that the former must yield to the latter in some circumstances as the NLRA protects some conduct that would otherwise violate state property law. We stress that in this case, though, UFCW has refrained from invoking the protection of the NLRA, leaving Walmart without a remedy for all of its claims, and that UFCW's claim to such protection is weak. We find that the exception to preemption under the NLRA announced in Sears applies here and affirm the trial court's injunction.

AFFIRMED.

SAWAYA and LAMBERT, JJ., concur.

11