

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-15-00374-CV

---

UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION; ORGANIZATION UNITED FOR RESPECT AT WALMART; NORTH TEXAS JOBS WITH JUSTICE; AND LESTER EUGENE LANTZ

APPELLANTS

V.

WAL-MART STORES, INC.; WAL-MART REAL ESTATE BUSINESS TRUST; WAL-MART REALTY COMPANY; WAL-MART STORES TEXAS, LLC; WAL-MART STORES EAST, LP; AND SAM'S EAST, INC.

APPELLEES

----------

### FROM THE 352ND DISTRICT COURT OF TARRANT COUNTY
### TRIAL COURT NO. 352-266419-13

----------

## MEMORANDUM OPINION[1]

----------

---

[1]*See* Tex. R. App. P. 47.4.

Appellants appeal from the trial court's final summary judgment entered in favor of Appellees on Appellees' claims against Appellants. Appellants also challenge the trial court's permanent injunction. We affirm the trial court's judgment but modify the permanent injunction and affirm it as modified.

## I. BACKGROUND

### A. DEMONSTRATIONS

Appellant United Food and Commercial Workers International Union (UFCW) is a labor organization of which appellant Organization United for Respect at Walmart (OUR) is a subsidiary. Because Walmart employees are not unionized, neither UFCW nor OUR operated as the representative of Walmart employees in labor negotiations with Walmart.[2] Appellant North Texas Jobs With Justice (North Texas Jobs) is affiliated with UFCW and OUR and is a coalition of community and union groups in the Dallas area. North Texas Jobs is part of the national organization Jobs With Justice, which advocates for "employees . . . to stand up for themselves." Appellant Lester Eugene Lantz was the director of North Texas Jobs beginning in 1990 until approximately 2013.[3] North Texas Jobs worked with UFCW and OUR regarding demonstrations at Walmart stores in support of Walmart employees.

[2]The parties alternately use "Wal-Mart" and "Walmart" to identify each appellee. Although the style of this appeal includes "Wal-Mart" and follows the style of the case from the trial court, we will use "Walmart" in this opinion.

[3]We will collectively refer to UFCW, OUR, North Texas Jobs, and Lantz as "the labor organizations."

2

Beginning in 2011, the labor organizations planned, conducted, and participated in several demonstrations at Walmart stores in Texas and around the United States. In their brief, the labor organizations characterize these demonstrations as "peaceful events." *See United Food & Commercial v. Wal-Mart Stores, Inc.*, 192 So. 3d 585, 587 (Fla. Dist. Ct. App. 2016) ("Although UFCW's demonstrations [in and around Walmart stores] were loud and disruptive, they were not violent.") (hereinafter, "*United Food Florida*"). In late 2011, fifteen to twenty protestors, wearing OUR shirts, entered a Walmart store in Irving "dispersed throughout the store and dropped off stacks of fliers all over the place," leaving the approximately 1,500 to 2,000 sheets of paper "on shelves and in boxes." This caused a "big disruption" in Walmart's business operations that day. A few months later, protestors wearing OUR shirts repeated this type of demonstration in the Irving store and approached employees, asking for their personal contact information. In May 2012, demonstrators, wearing OUR shirts, projected an anti-Walmart video onto an outside wall of a Dallas Walmart store and played loud music from a van adorned with OUR logos located in the Walmart parking lot. In September 2012, OUR members did a similar "video bomb" at a Walmart in Ennis. In October 2012 at stores in Dallas and Lancaster, demonstrators in OUR shirts chanted and marched around the stores for approximately one hour.

On October 31, 2012, leading up to Black Friday, protestors entered a Sam's Club in Duncanville dressed as zombies in OUR shirts and staged a "flash

3

mob" in the front of the store, dancing to Michael Jackson's "Thriller," which one protestor played from a radio he was carrying. During this dance, the demonstrators threw OUR cards in the air, chanted, blocked customers' access to the cashiers and some exits, and told customers that Walmart employees needed more pay. On November 8, 2012, forty to forty-five demonstrators in OUR shirts marched in the parking lot of an Ennis Walmart, chanting loudly and "blocking traffic in the parking lot and making it difficult for customers to enter and exit the Store and the parking lot." On the night of November 22, 2012, which was Thanksgiving, buses filled with demonstrators in OUR shirts[4] converged on Walmart parking lots in Balch Springs and Lancaster. The demonstrators banged on drums and chanted at the front entrances of the stores. In Balch Springs, the protestors eventually moved off Walmart's property but continued to "patrol" an adjacent parking area, which "impeded ingress and egress into the parking lot, backing up traffic." The next day, Black Friday, approximately fifty demonstrators, most of whom wore OUR shirts, protested at a Fort Worth Walmart by "chanting disparaging comments about Walmart" in the parking lot. The demonstrations continued into 2013 and involved protestors entering

---

[4]One demonstrator was "a leading UFCW organizer from previous demonstrations."

4

Walmart stores in Texas, blocking customers at the front of the stores, passing out flyers, and abandoning shopping carts full of refrigerated items in the store.[5]

Walmart had repeatedly informed the labor organizations at the demonstration sites and through letters to UFCW's general counsel beginning in 2011 that their demonstrations could not be conducted on Walmart property. Further, several of the stores had no-trespassing signs at their entrances and all of the stores in Texas had no-solicitation signs. The demonstrations on Walmart property continued, and the labor organizations planned similar demonstrations for Black Friday 2013. Counsel for the labor organizations admitted that absent an injunction, the labor organizations would not stop their actions on Walmart's properties.

## B. NLRB CHARGES

On March 1, 2013, appellee Walmart Stores, Inc. filed a charge against the labor organizations with the National Labor Relations Board (NLRB), alleging that they had violated the National Labor Relations Act (the Act) by "planning, orchestrating, and conducting a series of unauthorized and blatantly trespassory in-store mass demonstrations . . . by which [the labor organizations] restrained and coerced employees in the exercise of their . . . rights [under the Act] (which

---

[5]At oral argument, counsel for the labor organizations stated that the affidavit and video evidence submitted to the trial court showed that the labor organizations' protests were "fun events" and involved no violence such as people being "punched" or property being damaged.

5

includes the right to refrain from supporting the [labor organizations]).”[6]   *See* 29 U.S.C.A. §§ 157, 158(b)(1)(A) (West 1998) (guaranteeing employees' right to refrain from union-organization activities).   Walmart Stores, Inc. attached a summary of seventy "Events" at stores in thirteen states, including fifteen events in Texas.

On May 21, 2013, Walmart Stores, Inc. filed an amended charge, stating that the labor organizations "made threats of violence to employees and attempted to make improper payments to employees to yield to [the labor organizations'] wishes."   In support of this amended charge, Walmart Stores, Inc. attached a summary of nine events in five states occurring between October 25 and November 23, 2012, which previously had been included in the original charge.   Five of the events occurred at stores in Texas and involved demonstrators' actions in directly approaching Walmart employees and confronting them in an effort to intimidate or coerce them into supporting the labor organizations.   The amended charge did not include "trespassory . . . demonstrations" as did the original charge.   Indeed, Walmart has represented to other courts that it amended its charge to remove any trespass allegations included in the original charge, which it believed would enable it to pursue trespass claims in state courts.   *See Wal-Mart Stores, Inc. v. United Food &*

---

[6]Although Walmart Stores, Inc. filed the charge specifically against UFCW, it stated that UFCW acted "directly and through its subsidiaries, affiliated organizations, and agents, including [OUR]."

6

*Commercial Workers Int'l Union*, 354 P.3d 31, 33 (Wash. Ct. App. 2015) (hereinafter, "*United Food Washington*"), *review denied*, 367 P.3d 1084 (Wash. 2016); *United Food & Commercial Workers Int'l Union v. Wal-Mart Stores, Inc.*, 451 S.W.3d 584, 585 & n.1 (Ark. 2014) (hereinafter, "*United Food Arkansas*").

No party disputes that Walmart Stores, Inc. eventually withdrew its amended charge after the NLRB took no action on it.[7]  *See* Tex. R. App. P. 38.1(g); *see also* 29 C.F.R. § 102.9 (2016).

## C. SUIT FILED IN TEXAS STATE COURT

### 1. Motion to Dismiss and Plea to the Jurisdiction

Appellees, six business entities that comprise a portion of the Walmart corporate family,[8] filed suit against the labor organizations in a Texas state court, raising a trespass claim and seeking a declaratory judgment and a permanent injunction.  Other than its request for an award of attorney's fees and costs, Walmart did not seek monetary damages.  Walmart filed similar suits in several state courts, including Arkansas, California, Colorado, Florida, Maryland, and Washington.  *See, e.g.*, *United Food Florida*, 192 So. 3d at 588.  In the Texas litigation, the labor organizations filed a plea to the jurisdiction, arguing that

---

[7]Although one state court noted that the NLRB began an investigation into the charge before it was withdrawn, our record does not contain this information. *See United Food Washington*, 354 P.3d at 33.  *But see United Food Florida*, 192 So. 3d at 588 ("Walmart later withdrew these charges before the NLRB took action on the matter . . . .").

[8]We will refer to Appellees collectively and in the singular as "Walmart."

Walmart's claims were completely preempted by the Act, and pleaded the defense of consent. They also filed a motion to dismiss Walmart's claims under the Texas Citizens Participation Act (the TCPA), arguing that Walmart's claims impermissibly infringed on their rights to free speech and association. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.003 (West 2015).

The trial court overruled the plea to the jurisdiction and denied the motion to dismiss. The labor organizations sought mandamus relief in this court from the order overruling their plea to the jurisdiction, which we and the supreme court denied. *In re United Food & Commercial Workers Int'l Union*, No. 02-13-00434-CV, 2014 WL 670663, at *1 (Tex. App.—Fort Worth Feb. 20, 2014, orig. proceeding [mand. denied]) (mem. op.). The labor organizations appealed the denial of their motion to dismiss. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.008 (West 2015). We affirmed the trial court's denial after concluding that Walmart had established a prima facie case of trespass and that the labor organizations had failed to establish its defense of consent. *United Food & Commercial Workers Int'l Union v. Wal-Mart Stores, Inc.*, 430 S.W.3d 508, 513–14 (Tex. App.—Fort Worth 2014, no pet.).

### 2. Summary Judgment and Permanent Injunction

Walmart then added a claim to their complaint against the labor organizations, seeking recovery for its private nuisance injuries that flowed from the labor organizations' intentional and substantial interference with Walmart's use and enjoyment of its property and that caused unreasonable discomfort or

8

annoyance. Walmart also sought recovery for public-nuisance injuries caused by the labor organizations' interference on "public thoroughfares." Again, Walmart's only prayer for a monetary recovery was one for attorney's fees and costs.

North Texas Jobs filed a no-evidence motion for summary judgment on Walmart's claims for trespass, nuisance, injunctive relief, and a declaratory judgment. Lantz similarly moved for a no-evidence summary judgment on each of Walmart's claims. The labor organizations then filed a traditional motion for summary judgment on Walmart's declaratory-judgment claim, a no-evidence motion on Walmart's claim for its nuisance injuries, and a traditional motion on Walmart's trespass claim. Walmart moved for summary judgment on its claims for trespass, nuisance, a declaration of rights and on its request for injunctive relief.

The trial court granted Walmart's motion regarding nuisance and trespass, denied Walmart's motion as to its claim for a declaratory judgment, granted the labor organizations' motion for summary judgment on Walmart's request for a declaratory judgment, and denied the remaining summary-judgment motions.[9] The trial court then entered a final judgment in Walmart's favor and entered a permanent injunction, enjoining the labor organizations; "their parents, subsidiaries and affiliates[;] their non-Walmart employee officers, employees, and

---

[9]Walmart does not appeal the trial court's summary judgment in favor of the labor organizations on Walmart's declaratory-judgment request. Thus, we will not address this portion of the trial court's order.

9

agents[;] and all other non-Walmart employees who act in concert with [the labor organizations], directly or indirectly," from

   a.   Trespassing on Walmart's private property at any store or facility in the State of Texas that is owned or controlled by [Walmart];

   b.   Entering on Walmart's private property at any store or facility in the State of Texas that is owned or controlled by [Walmart] to engage in activities such as unlawful picketing, patrolling, parading, demonstrations, "flash mobs," handbilling, solicitation, customer disruptions, and manager confrontations;

   c.   Entering on Walmart's private property at any store or facility in the State of Texas that is owned or controlled by [Walmart] for any purpose other than shopping for and/or purchasing merchandise;

   d.   Barricading, blocking, or preventing access to, egress from, or free movement over, Walmart's private property at any store or facility in the State of Texas that is owned, operated, or controlled by [Walmart]; and

   e.   Interfering with, obstructing, or blocking Walmart's and its customers' access to, and use of, easements and/or right-of-ways granted to Walmart across or upon apron sidewalk areas and parking lots adjacent to stores for which Walmart has a "building-only" lease.

Similar permanent injunctions have been entered in California, Colorado, Florida, and Maryland. *See Walmart Stores, Inc. v. United Food & Commercial Workers Int'l Union*, No. B259926, 2016 WL 5957279, at *3 (Cal. Ct. App. Oct. 14, 2016) (op. on reh'g) (hereinafter, "*United Food California*"); *Wal-Mart Stores, Inc. v. United Food & Commercial Workers Int'l Union*, No. 14CA2061, 2016 WL 2605737, at *1–2 (Colo. App. May 5, 2016) (hereinafter, "*United Food*

10

*Colorado*"), *cert. denied*, No. 16SC478, 2016 WL 5723926 (Colo. Oct. 3, 2016); *United Food Florida*, 192 So. 3d at 587; *United Food & Commercial Workers Int'l Union v. Wal-Mart Stores, Inc.*, 137 A.3d 355, 361 (Md. Ct. Spec. App. 2016) (hereinafter, "*United Food Maryland*"), *cert. granted*, No. 242, 2016 WL 5723986 (Md. Sept. 2, 2016); *see also United Food Arkansas*, 451 S.W.3d at 586–87 (affirming temporary injunction with similar prohibitions).

## D. APPEAL

The labor organizations filed this appeal from the trial court's final judgment, arguing that because Walmart's claims were the same in a fundamental respect to the allegations in Walmart's administrative charge, Walmart's state-court claims were preempted by the Act under the Supremacy Clause. Accordingly, the labor organizations contend that the trial court erred by denying their plea to the jurisdiction based on preemption.

The labor organizations also attack the trial court's summary judgment on Walmart's trespass claim and its permanent injunction as it relates to any entry onto parking lots and sidewalks to which Walmart does not have the right of exclusive possession. They argue the summary judgment as to Walmart's claim based on the labor organizations' interference leading to nuisance injuries was in error because Walmart failed to prove that the labor organizations' conduct was objectively unreasonable or that it suffered harm different in kind from the general public. Finally, the labor organizations contend that the trial court erred by

11

entering the injunction regarding entry for any non-shopping purpose because such a prohibition is overbroad.

## II. PREEMPTION

As they argued in their petition for writ of mandamus seeking relief from the trial court's denial of their plea to the jurisdiction, the labor organizations argue in their first issue on appeal that the Act completely preempted Walmart's claims against them. Although we denied their mandamus petition, we conclude that our previous memorandum ruling, which did not address the merits of the petition, is not the law of the case; thus, we will determine whether Walmart's claims are preempted by the Act. *See San Patricio Cty. v. Nueces Cty.*, 492 S.W.3d 476, 487 (Tex. App.—Corpus Christi 2016, pet. filed).

We review de novo the trial court's conclusion that Walmart's claims were not preempted by the Act and its resulting denial of the labor organizations' plea to the jurisdiction. *See Hous. Belt & Terminal Ry. Co. v. City of Hous.*, 487 S.W.3d 154, 160 (Tex. 2016) (reviewing ruling on plea to the jurisdiction under de novo standard of review); *DHL Express (USA) Inc. v. Falcon Express Int'l Inc.*, 408 S.W.3d 406, 410 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) ("Whether a claim is preempted is an issue of law we review de novo."), *cert. denied*, 135 S. Ct. 2893 (2015). Federal preemption is an affirmative defense over which the labor organizations bore the burden to show its application and to overcome the presumption against preemption. *See Great Dane Trailers, Inc. v.*

*Estate of Wells*, 52 S.W.3d 737, 743 (Tex. 2001); *Comcast Cable of Plano, Inc. v. City of Plano*, 315 S.W.3d 673, 677 (Tex. App.—Dallas 2010, no pet.).

Although the application of preemption to a dispute is multilayered and the parties necessarily expend the vast majority of their briefing on this issue, we are fortunate that several state courts have blazed a path through the preemption forest as it covers these same parties, the same complained-of conduct by the labor organizations, the same NLRB charge and amended charge, and the same state-court strategies. Beginning in May 2016, four state courts have conducted detailed legal reviews of the preemption doctrine as applied to Walmart's allegations and concluded that Walmart's claims are not preempted by the Act. In short, those courts concluded that because the conduct underlying the state suits was the interference with Walmart's property rights and did not encompass any coercion or restraint of employee rights under the Act, the state-court claims were not preempted by the Act. *See United Food California*, 2016 WL 5957279, at *17; *United Food Colorado*, 2016 WL 2605737, at *4–5; *United Food Florida*, 192 So. 3d at 588–92; *United Food Maryland*, 137 A.3d at 365–71. One state court concluded the opposite: Walmart's trespass claim was preempted by the Act because Walmart challenged labor-organization conduct as well as its location. *United Food Washington*, 354 P.3d at 36–38. *But see United Food California*, 2016 WL 5957279, at *15–17 (disagreeing with *United Food Washington* and concluding Walmart's claims were not preempted because trespass claim "turned on the location of the union's conduct, rather than its

13

objective, purpose, or effect"); *United Food Colorado*, 2016 WL 2605737, at *5 (criticizing *United Food Washington* and stating "controversies are not identical merely because they concern the same conduct, if that conduct is objectionable for entirely different reasons under state law and the [Act]," as was the conduct of the labor organizations directed at Walmart).

We agree with the reasoning stated by the California, Colorado, Florida, and Maryland state appellate courts in reaching their conclusions that Walmart's tort claims were not preempted by the Act. *See United Food California*, 2016 WL 5957279, at *4–10; *United Food Colorado*, 2016 WL 2605737, at *2–6; *United Food Florida*, 192 So. 3d at 588–92; *United Food Maryland*, 137 A.3d at 366–71. Walmart's claims raised in the trial court here focused on the location of the demonstrations and did not call upon the trial court to consider whether the challenged conduct interfered with employee rights under the Act. We do not need to reinvent the wheel and engage in an exhaustive explanation of the law of preemption, its exceptions, and their application to Walmart's claims and to the arguments raised by the labor organizations. It is enough to say that Walmart sought to stop the labor organizations' conduct not based on its content or the fact that it involved labor relations, which is a subject for the NLRB, but based on its location on Walmart's property, which is a subject for state tort law; thus, Walmart's state-court claims of trespass and nuisance were not preempted by the Act because the state court's adjudication of that controversy would not realistically interfere with the NLRB's primary jurisdiction to regulate unfair labor

14

practices under the Act. *See Sears, Roebuck & Co. v. San Diego Cty. Dist. Council of Carpenters*, 436 U.S. 180, 194–98, 98 S. Ct. 1745, 1755–58 (1978); *see also Belknap, Inc. v. Hale*, 463 U.S. 491, 509–12, 103 S. Ct. 3172, 3182–84 (1983); *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 784 (9th Cir.), *cert. denied*, 534 U.S. 1020 (2001); *Windfield v. Groen Div., Dover Corp.*, 890 F.2d 764, 769–70 (5th Cir. 1989); *United Food Maryland*, 228 A.3d at 369–71; *cf. Lechmere, Inc. v. NLRB*, 502 U.S. 527, 536–41, 112 S. Ct. 841, 847–50 (1992) (noting the Act confers rights only on employees, not on unions or their nonemployee organizers, and recognizing employer's right to exclude nonemployee organizers from its property if union access to employees away from employer's property is available); *Retail Store Emps. Local 1001*, 203 N.L.R.B. 580, 581 (1973) ("Whether or not the [union's] conduct [of distributing union literature in employee lunchroom and soliciting membership], in violation of the Company's posted no-solicitation and no-distribution rule, constitutes a trespass is a matter for the state and local authorities and [the NLRB] make[s] no comment thereon. The only issue [before the NLRB] is whether the [union's] admitted conduct restrains and coerces employees within the meaning of . . . the Act."). We overrule the labor organizations' first issue.

## III.  SUMMARY JUDGMENT

### A.  STANDARD AND SCOPE OF REVIEW

We review a trial court's granting of a summary judgment de novo. *Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013). Here, the parties filed cross-motions

for summary judgment; therefore, we consider the entire record and determine whether there is more than a scintilla of probative evidence raising genuine issues of material fact on each element of the challenged claims and on all questions presented by the parties. *See* Tex. R. Civ. P. 166a(c), (i); *Neely v. Wilson*, 418 S.W.3d 52, 59 (Tex. 2013); *Buck v. Palmer*, 381 S.W.3d 525, 527 & n.2 (Tex. 2012); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). In short, our "ultimate question is simply whether a fact issue exists." *Buck*, 381 S.W.3d at 527 n.2. When, as here, a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, we will affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

## B. TRESPASS

In their second issue, the labor organizations argue that the trial erred by entering summary judgment in favor of Walmart on its trespass claim because Walmart did not hold the right to exclusively possess the sidewalks and parking lots adjacent to Walmart stores located in shopping centers. The labor organizations argue in their appellate briefing that because the common areas around Walmart stores located in shopping centers are subject to nonexclusive, business-use easements granted to neighboring tenants, Walmart does not have sufficient property rights to state a trespass claim based solely on the

16

demonstrators' mere presence; therefore, they argue that Walmart was required to show the labor organizations' activities unreasonably interfered with Walmart's use and enjoyment of these areas, which it did not do.

Although the labor organizations frame this issue as an attack on the summary judgment in favor of Walmart on its trespass claim, the argument primarily challenges the scope of the injunction to the extent it enjoined activities in areas where Walmart's ownership interest was subject to nonexclusive easements. *See United Food Colorado*, 2016 WL 2605737, at *6; *United Food Maryland*, 137 A.3d at 372–73. It is important to recognize that the labor organizations do not argue that Walmart could not support a trespass claim as to the interior of Walmart's stores or as to parking lots and sidewalk areas not subject to an easement. They argue in their briefing only that Walmart could not maintain a trespass claim and that the trial court could not enjoin any activity occurring in parking lots or sidewalk areas that were subject to an easement. The labor organizations recognize that even in these areas, they would not have the "privilege" to trespass or the "right" to hold "events" there. At oral argument, however, the labor organizations clearly stated that they were not arguing that Walmart did not have a sufficient property interest in the stores at issue to maintain a trespass claim. And Walmart's counsel stated at oral argument, and the labor organizations' counsel did not contradict, that the undisputed evidence showed that Walmart had the exclusive right to control the properties subject to the trial court's injunction.

17

We conclude that based on the tenor of the parties' oral arguments and their recognition that the facts regarding Walmart's trespass claim are undisputed, it is unnecessary to parse each element of this claim in light of the summary-judgment evidence and the standard of review. Walmart established through undisputed summary-judgment evidence its right to exclusive possession of the properties subject to the injunction and the labor organizations' unauthorized entries onto those properties. Trespass requires nothing more. *E.g.*, *Envtl. Processing Sys., L.C. v. FPL Farming Ltd.*, 457 S.W.3d 414, 422 (Tex. 2015); *Gleason v. Taub*, 180 S.W.3d 711, 713–14 (Tex. App.—Fort Worth 2005, pet. denied); *accord United Food Colorado*, 2016 WL 2605737, at *3, *6–7 ("[T]o sustain its trespass claim, Walmart needed only [to] prove that the unions entered its property without its permission. It was not required to show that the unions unreasonably interfered with its use and enjoyment of the property."); *United Food Maryland*, 137 A.3d at 373–74 ("Having consented to entry onto its land for that limited purpose [i.e., ingress and egress to adjacent property lessees, Walmart] did not give up its right to exclude from its property others entering for a non-business purpose, such as the Union demonstrators who paraded and otherwise protested in its common areas, even if those activities did not unreasonably interfere with Walmart's use of the property."). We overrule issue two.

18

## C. NUISANCE

In their third issue, the labor organizations argue that the trial court erred by entering summary judgment in favor of Walmart on its claim that the labor organizations' interference caused public and private nuisance injuries because Walmart failed to proffer any summary-judgment evidence either that it suffered a special injury or that the labor organizations' conduct was objectively unreasonable.[10] *See Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, No. 15-0049, 2016 WL 3483165, *6 (Tex. June 24, 2016) (recognizing nuisance refers "not to a cause of action or to the defendant's conduct or operations, but instead to the particular type of *legal injury* that can support a claim or cause of action seeking legal relief.") For the following reasons, we overrule the labor organizations' third issue.

### 1. Private-Nuisance Injuries

Regarding private nuisance, the labor organizations assert that there was no summary-judgment evidence that their conduct was objectively unreasonable. A substantial interference with another's interest in the private use and enjoyment of land that causes objectively unreasonable discomfort or annoyance qualifies as a nuisance injury. *Id.* at *6–8; *Holubec v. Brandenberger*, 111 S.W.3d 32, 37 (Tex. 2003); *Lethu Inc. v. City of Hous.*, 23 S.W.3d 482, 489

---

[10]Although the labor organizations raised other arguments in their no-evidence motion for summary judgment regarding nuisance, these are the only arguments in their appellate briefing and, thus, preserved for our review.

(Tex. App.—Houston [1st Dist.] 2000, pet. denied). Stated another way, an interference with use or enjoyment must be sufficiently substantial and its effects objectively unreasonable to establish the legal injury of nuisance. *Crosstex*, 2016 WL 3483165, at *11–12.

But as the supreme court has cautioned, the objective-unreasonableness inquiry focuses on the interference's effect on Walmart's comfort or contentment, not on the nature of the labor organizations' conduct. See *id.* at *8–9. The labor organizations do not address the summary-judgment evidence in this light, solely pointing out the alleged absence of evidence that their conduct was objectively unreasonable. Walmart offered undisputed evidence that the demonstrators on more than one occasion blocked ingress and egress to the stores, blared music outside the stores, projected an anti-Walmart video from the parking lots onto exterior store walls, and chanted through megaphones while marching around the exterior of stores. Customers and employees complained about the noise. In some instances, Walmart had to call the police to get the demonstrators to leave the property. Some customers indicated that "they would have done their shopping somewhere else had they known the incident was taking place," and one stated she would not shop at that store again. This undisputed evidence established as a matter of law a prima facie claim of an intentional interference causing objectively unreasonable discomfort or annoyance. The labor organizations do not rebut this evidence but only argue that their actions constituted constitutionally protected free speech, which can never be considered

20

objectively unreasonable. Once again, we look to the conduct's effect on Walmart's use and enjoyment of its property, not the conduct itself. Although whether the effects of an interference were objectively unreasonable is generally a question of fact, Walmart's undisputed evidence of the effects of the labor organizations' actions on its use and enjoyment entitled it to judgment as a matter of law on its claim for private nuisance injuries. *See id.* at *20 (noting that although nuisance elements generally are questions for a fact-finder, they may be decided as a matter of law if the underlying facts are undisputed).

## 2. Public-Nuisance Injuries

An unreasonable interference with a right common to the general public may lead to public-nuisance injuries. *See* Eric J. Mayer & Brian Lowenberg, *Nuisance Joins the PJC*, 61 The Advocate (Tex.) 54, 54 (2012). The labor organizations assert that Walmart has no standing to recover for its public-nuisance injuries flowing from the labor organizations' actions on public roadways because it does not have the requisite special injury different than that suffered by others. Indeed, to have standing to assert a claim seeking recovery for public-nuisance injuries, Walmart must show that its injuries were different in kind from that suffered by the public at large. *See Jamail v. Stoneledge Condo. Owners Ass'n*, 970 S.W.2d 673, 676 (Tex. App.—Austin 1998, no pet.); *Boone v. Clark*, 214 S.W. 607, 610–11 (Tex. Civ. App.—Fort Worth 1919, writ ref'd). Of course, standing to seek redress for the legal injury of nuisance is a jurisdictional

21

issue that a trial court decides as a matter of law and we review de novo. *See* Mayer & Lowenberg*, supra*, at 55.

Walmart points to undisputed summary-judgment evidence showing that the labor organizations commonly impeded road traffic going into or coming out of its stores by blocking adjacent roads and intersections with the stated goal of stopping traffic. Jobs with Justice issued a pamphlet to its members that included "some ideas about potential Change Walmart actions," which were in a "menu" and grouped by "Appetizers," "Vegetables," or "Main Course." One main-course suggestion was "Outside – march and rally – try to have maximum impact – e.g. block traffic, occupy intersections." These road blockages were directed at Walmart and its customers, specifically in an attempt to prevent customers from entering or exiting Walmart's property. Although the general public suffered an interference with the public right of travel and resulting inconvenience from the labor organizations' actions in public roadways, Walmart suffered injuries to its business interests, different in kind and degree than that of the general public. *See* Restatement (Second) of Torts § 821C cmts. b, i (Am. Law Inst. 1979); *see also Robinson v. Indianola Mun. Separate Sch. Dist.*, 467 So. 2d 911, 918 (Miss. 1985) (recognizing adjacent landowner is specially damaged where highway obstruction resulting in public nuisance prevents ingress and egress to his property); *Boone*, 214 S.W. at 611 (noting if owners of properties adjacent to road obstructed by producing oil wells show that the wells will drain oil from their properties, they will sustain a special injury not suffered by the general public).

22

The trial court did not err by concluding that Walmart had standing to assert a claim for redress of its public-nuisance injuries.

## IV. SCOPE OF PERMANENT INJUNCTION

In their fourth issue, the labor organizations argue that the trial court's permanent injunction was overbroad because it prohibited them from entering Walmart stores for any non-shopping purpose. They do not directly contest the sufficiency of the evidence to support the necessary elements of a permanent injunction and, therefore, that the trial court abused its discretion by entering permanent injunctive relief. Indeed, based on the undisputed evidence establishing Walmart's claims as a matter of law, the trial court did not abuse its discretion by awarding Walmart permanent injunctive relief. *Cf. Hanson Aggregates W., Inc. v. Ford*, 338 S.W.3d 39, 48 (Tex. App.—Austin 2011, pet. denied) (op. on reh'g) ("Given . . . appellees' failure to prove an actionable nuisance by Hanson as a matter of law, the district court lacked discretion to issue the permanent injunction.").

As we do when considering the propriety of injunctive relief, we review the scope of an injunction for an abuse of the trial court's discretion. *See Holubec v. Brandenberger*, 214 S.W.3d 650, 658 (Tex. App.—Austin 2006, no pet.); *see also Noell v. City of Carrollton*, 431 S.W.3d 682, 712 (Tex. App.—Dallas 2014, pet. denied). An injunction that enjoins lawful as well as unlawful actions may constitute an abuse of discretion; thus, a permanent injunction must be sufficiently specific and descriptive to enjoin only those acts specifically sought to

23

be restrained. *Holubec*, 111 S.W.3d at 39–40; *Lagos v. Plano Econ. Dev. Bd., Inc.*, 378 S.W.3d 647, 651 (Tex. App.—Dallas 2012, no pet.); *see also* Tex. R. Civ. P. 683. Further, a permanent injunction may not go beyond the relief prayed for by the plaintiff. *Holubec*, 111 S.W.3d at 39; *Webb v. Glenbrook Owners Ass'n, Inc.*, 298 S.W.3d 374, 384 (Tex. App.—Dallas 2009, no pet.) (op. on reh'g). But an injunction must be broad enough to prevent a repetition of the wrong sought to be corrected "whether the repetition be in form identical to that employed prior to the injunction or (what is far more likely) in somewhat different form calculated to circumvent the injunction as written." *San Antonio Bar Ass'n v. Guardian Abstract & Title Co.*, 291 S.W.2d 697, 702 (Tex. 1956).

The labor organizations assert that the permanent injunction was overbroad because it went beyond Walmart's factual pleadings and enjoined lawful activities such as applying for a job at a particular Walmart store.[11] *See RCI Entm't (San Antonio), Inc. v. City of San Antonio*, 373 S.W.3d 589, 603 (Tex. App.—San Antonio 2012, no pet.) ("Where a party's acts are divisible, and some acts are permissible and some are not, an injunction should not issue to restrain actions that are legal or about which there is no asserted complaint."). In their verified petition, Walmart alleged that the labor organizations committed trespass by entering Walmart's property without permission "to engage in picketing,

---

[11]In response to Walmart's permanent-injunction application, the labor organizations argued in the trial court that any relief must be "narrowly defined to prohibit those activities of which Walmart has complained" and could not include a "blanket prohibition against any entry for 'non-shopping purposes.'"

24

patrolling, demonstrations, 'flash mobs,' handbilling, solicitation, customer disruptions, associate engagement for any non-shopping purpose, and manager confrontations." In its prayer for relief, Walmart asked the trial court to enjoin the labor organizations' entry into any Walmart store "for any purpose other than shopping for and/or purchasing merchandise at Walmart stores." This is the same conduct the trial court ultimately enjoined. Accordingly, we disagree with the labor organizations' argument that the trial court's injunctive relief went beyond that prayed for by Walmart.

But we agree with the labor organizations' argument that this prohibition was overly broad because it arguably enjoined lawful activities. When Walmart formally notified the labor organizations that it considered their actions to be trespass, Walmart explained that its business invitation did not allow the labor organizations to commit trespass on its property:

> This letter constitutes yet another formal, written notice that non-Walmart associates acting under — or in response to — the direction, control, or inducement of the Union, its agents, employees, representatives, or affiliates . . . shall not enter inside any Walmart facility in the country to engage in the activity described above[12] or *any other non-shopping, labor-related activity including, but not limited to*, picketing, patrolling, parading, petitioning, handbilling, soliciting, 'flash mobs,' customer disruptions, or other demonstrations inside any Walmart facility *at any time*. . . .
>
> Walmart's invitation to the general public to shop at its stores does not include authorization for non-associates to engage in the labor-related activities described above. Walmart — again —

---

[12]The in-store activity was described as entering the store to confront managers and handing out literature to customers and employees.

25

expressly revokes any invitation, license, or privilege of the Union and its non-associate agents to enter onto or inside Walmart's property to engage in any of the aforementioned activities, and failure to comply with this prohibition shall constitute trespass under applicable state law. [First emphasis supplied.]

Walmart considered this notice to "revoke[] the license" of the labor organizations to be on its property "for any non-shopping purpose." In the trial court, Walmart argued that the requested "non-shopping" prohibition was not overbroad because the labor organizations could only enter the property "for the purpose of the general invitation of the public."

In *United Food Maryland*, the labor organizations raised this same complaint regarding the scope of the injunction. 137 A.3d at 374. The court of special appeals noted that the permanent injunction was not as broad as the labor organizations asserted:

> The injunction plainly does not extend to idle conversation between Union-affiliated customers, on the one-hand, and customers, associates, or managers, on the other hand, *while shopping* in a Walmart store. Nor does it extend to activities that are incidental to shopping, such as a Union member's picking up a shopper in a Walmart parking lot or attending a Girl Scout cookie sale with children at a Walmart store.

*Id.* at 375 n.21. The court of special appeals concluded that the labor organizations did not have the right to enter onto Walmart's private property to engage in activities "unrelated to the limited business invitation to shop at the store." *Id.* at 374–75. Thus, the court concluded, the trial court's injunction barring all non-shopping activities by the labor organizations was not overly broad. *Id.* at 375.

26

Although the disputed portion of the injunction in *United Food Maryland* is the same as the language in the injunction challenged in this appeal, *see id.* at 361, we do not read this language to expressly or implicitly allow activities that are unrelated to shopping but continue to be within Walmart's limited business invitation. The labor organizations' example is an apt one. Entering a Walmart store to apply for a job—a lawful activity that would fall within Walmart's limited business invitation to the public—would be unrelated and not incidental to a shopping or purchasing purpose and, thus, would be barred by the injunction as worded. We believe Walmart's formal notice to the labor organizations of the limits of its business invitation got it exactly right. Walmart did not include in its business invitation any "non-shopping, labor-related activity" on its private properties.

We do not agree with Walmart that any change to the wording of paragraph "c." would create a "loophole" for the labor organizations to "exploit." *See San Antonio Bar*, 291 S.W.2d at 702 (holding injunction may be crafted to avoid conduct that would be calculated to circumvent a narrower injunction). In the trial court, the labor organizations relied on Walmart's formal notices to argue that the scope of any injunction should be limited to the activities complained of in those notices. As we have pointed out, one of Walmart's formal notices specified that "non-shopping, labor-related" activities by the labor organizations were outside Walmart's limited business invitation and constituted trespass. In

27

moving for summary judgment, the labor organizations recognized that Walmart's trespass claim was based on the labor-organizations' "labor-related activities."

We conclude paragraph "c." of the permanent injunction applied to bar lawful activities within Walmart's limited business invitation, which renders that paragraph overly broad and an abuse of discretion. *See, e.g.*, *Holubec*, 214 S.W.3d at 657–58; *Computek Comput. & Office Supplies*, 156 S.W.3d 217, 223 (Tex. App.—Dallas 2005, no pet.); *Tex. Tech Univ. Health Sci. Ctr. v. Rao*, 105 S.W.3d 763, 770 (Tex. App.—Amarillo 2003, pet. dism'd); *accord Gasaway v. Borderland Coal Corp.*, 278 F. 56, 64–65 (7th Cir. 1921); *Doe v. Phillips*, 259 S.W.3d 34, 38 (Mo. Ct. App. 2008); *cf. People v. Toomey*, 203 Cal. Rptr. 642, 655 (Cal. Ct. App. 1984) (concluding injunction not overly broad in scope because "challenged provisions of the permanent injunction are necessary to the objective of preventing future violations"). We sustain issue four.

## V.  CONCLUSION

Walmart's claims raised in the trial court focused on the location of the demonstrations and did not call upon the trial court to consider whether the challenged conduct interfered with employee rights under the Act; thus, Walmart's claims were not preempted. Based on the largely undisputed summary-judgment record, the trial court did not err by granting Walmart judgment as a matter of law on its claims for trespass and for interference causing nuisance injuries. We affirm the trial court's summary judgment in favor of Walmart. *See* Tex. R. App. P. 43.2(a).

28

Although the trial court did not abuse its discretion in granting Walmart permanent injunctive relief based on its claims that were established as a matter of law, the scope of paragraph "c." was overly broad so as to prohibit lawful activities within Walmart's limited business invitation to the public. Therefore, we modify paragraph "c." of the permanent injunction to state that the following conduct is enjoined:

> Entering on Walmart's private property at any store or facility in the State of Texas that is owned or controlled by Wal-Mart Stores, Inc., Wal-Mart Real Estate Business Trust, Wal-Mart Realty Company, Wal-Mart Stores Texas, LLC, Wal-Mart Stores East, LP, Sam's East, Inc., or any of their subsidiaries, affiliates, or operating entities for any non-shopping, labor-related purpose.

*See Ghidoni v. Stone Oak, Inc.*, 966 S.W.2d 573, 583 (Tex. App.—San Antonio 1998, pet. denied) (en banc op. on reh'g) (modifying overly broad permanent injunction). As modified, we affirm the trial court's permanent injunction. *See* Tex. R. App. P. 43.2(b).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL: MEIER and GABRIEL, JJ.; and CHARLES BLEIL (Senior Justice, Retired, Sitting by Assignment).

DELIVERED: October 27, 2016